# THE CITY OF DENVER *v.* BAYER.

*(Supreme Court of Colorado, December 21, 1883—Appeal from the District Court of Arapahoe County).*

1. DAMAGES TO ABUTTING LOT OWNERS, BY OBSTRUCTION IN STREETS. Abutting lot owners have rights in the street not shared by others. Their easement is property within the meaning of our Constitution, and any interference therewith which results in injury, will (with certain exceptions) be justly compensated—there being a *damaging*, if not a *taking* of private property. Whatever interference with the street permanently diminishes the value of his premises, is as much a damage as though caused by direct physical injury.

2. SAME---DAMNUM ABSQUE INJURIA, WHEN. But sometimes these interferences and the resulting injury may properly, even in this State, be held to be *damnum absque injuria*—as where they are occasioned by a reasonable improvement of the street by the proper authorities for the greater convenience of the public; or where a temporary inconvenience or injury results from a legitimate use thereof by the public. In purchasing his lot or dedicating the easement to the public, he is conclusively presumed to have contemplated the power and authority of the city authorities to skillfully make reasonable changes and improvements, by raising or lowering the grade, or otherwise. But these presumptions attach only when the purpose of the change is to render the street more convenient and useful as a public highway.

3. SAME—ORDINARY RAILROADS. While it may be said that bridges, culverts, and even street railways are matters contemplated by the lot owner, no such presumption applies to the use of the street by an ordinary railroad. This is not a local convenience, but an obstruction to the use of the street by the local public, and is a burden or servitude which abutting owners cannot be presumed to have anticipated or consented to.

4. SAME—SAME—COMPENSATION. For any injury and annoyance occasioned by such railroad, which are peculiar to an abutting owner, and not shared by the general public—which affect his property and impair its value without injuring that of his neighbor—he ought to receive compensation, though the city hold the fee, and grant the right of way.

5. SAME—SAME—CITY NOT LIABLE. If the city by ordinance only gave consent on behalf of the corporation and the public that the street might be used by a railroad, it would of course not be liable; and if it was intended by the ordinance to confer upon the railroad company a right to use the street without compensation to adjoining owners, where permanent injury resulted from such use, the ordinance is, in this respect, *ultra vires* and void. The relation of principal and agent does not exist in such case.

6. SAME—SAME—MEASURE OF DAMAGES. For injuries of this kind a single recovery can be for the whole damage to result from the act—the injury being continuing and permanent. The measure of compensation, (in suit between the proper parties) is the actual diminution in the market

value of the premises, for any use to which they may reasonably be put, occasioned by the construction and operation of the railroad through the adjacent street. No personal inconvenience or annoyance, no interference with the owner's trade or business, no decrease in the rental value of the premises occasioned by the road, and no temporary interruption or damage thereby, constitutes the test; these things can only be considered as they may aid in determining the actual depreciation of the market value of the realty and improvements. And if the owner receive benefits from the road peculiar to himself, and not shared by the general public, this fact should be considered in determining the amount of his compensation.

HELM, J.   Plaintiff below seeks to recover in this action for the obstruction of free ingress and egress to and from his lots by means of the street upon which they front; and for a depreciation in the value of his property caused by the construction and operation upon the street, of the railroad mentioned in the pleadings.

Three questions are fairly presented for adjudication by the record before us:

*First:* Is the abutting lot owner in *this* State entitled to compensation when the adjoining street is occupied by an ordinary railroad, and his property is thereby injured. *Second:* If he is, did the City of Denver become liable therefor through the action of its council in passing the ordinance recited in the answer; and, *third:* If the adjacent proprietor is entitled to compensation, what is the proper measure of damages by which the same shall be determined.

The abutting lot owner has a peculiar interest in the street; he has rights therein not shared by the general public. If the fee thereof be in the municipality, he owns an easement therein; this easement or right though incorporeal and intangible, often gives to the realty whatever value it may be found to possess; without it the land and the improvements thereon may be of little use or benefit; with it they may yield to the owner a handsome revenue; this is especially true of business streets and business blocks erected thereon.

Property in its broader and more appropriate sense is not alone the chattel or the land itself, but the right to freely possess, *use,* and alienate the same; and many things are considered property which have no tangible existence, but which are necessary to the satisfactory use and enjoyment of that which is tangible. The people and the Courts of Colorado are

constantly treating as property the right to a use of water acquired by priority of appropriation; the right of user would of course be of no value without the water, but it is this right that is mainly the subject of ownership.

Incorporeal hereditaments, particularly those denominated easements, have always been considered property both by the civil and the common law. They are generally attached to things corporeal and are said to "issue out of or concern" them; but any wrongful interference therewith has been promptly recognized and punished by the Courts.

No good reason is observed for discriminating against the easement in a street connected with the lot of an abutting owner. We are disposed to say that it is property within the meaning of our Constitution; and any interference therewith which results in injury to the realty must, with the exceptions hereinafter stated, be justly compensated; if in such a case there be no technical "taking" of private property, there is a damaging thereof within the constitutional inhibition. Whatever permanently prevents the adjacent owner's free use of the street for ingress or egress to or from his lot; and whatever interference with the street permanently diminishes the value of his premises, is as much a damage to his private property as though some direct physical injury were inflicted thereon.

But sometimes these interferences and resulting injury, may properly, even in this State, be held to be *damnum absque injuria*, as where they are occasioned by a reasonable improvement of the street by the proper authority for the greater convenience of the public, or where a mere temporary inconvenience or injury results from a legitimate use thereof by the public.

The streets of a municipal corporation are highways; they are dedicated to the use of the general public, and it has a right therein in the nature of an easement; a right which is termed an easement by some of the authorities; whether the fee thereof be in the city or in the adjoining owner, this right of the public ordinarily remains the same; if in the former, such fee is generally in trust for the benefit of the public; if in the latter, it is subject to the right of user or enjoyment by the public, for all the ordinary and legitimate purposes of a highway.

With us the control thereof is, in either case, vested by law in the municipal government. It is the duty of the city council to protect and improve the same in such manner as will render it most useful for a highway. In determining what changes and improvements are most conducive to this end, the council exercises a large discretion. And unless unreasonable changes are made, or injury results to the adjoining premises, through the unskillfulness or negligence of those employed, the owner thereof will not be heard to complain; though in fact, the real value and convenience of his property are diminished thereby; for in purchasing his lot, or in relinquishing the public easement, he is conclusively presumed to have contemplated this power and authority of the municipal government, and is held to have anticipated any injury to his abutting land resulting from a reasonable and proper exercise thereof.

But it must be borne in mind that these presumptions attach only so long as the purpose of the change is to render the street more convenient and useful as a highway. When this object is abandoned, and the council direct or permit a change or use wholly foreign to the ordinary purposes of a highway; and when thereby adjacent property is actually damaged, the owner thereof is, in this State, entitled to reasonable compensation for the injury.

The abutting owner may well be presumed to have taken into consideration the fact that the grade of the street might be raised or lowered, that pavement might be laid, and bridges and culverts constructed, and that a street railroad even, might be built and operated thereon; and it may fairly be presumed that in purchasing, he anticipated and allowed for the possible or probable damages to result from these and similar changes, or that he signified his consent thereto, and thus deprived himself of any right to compensation therefor.

But no such presumption, consent or estoppel, applies to the use of the street by an ordinary railroad. The argument that such a railroad is an improved public highway, and therefore its construction and operation in the street is only an improved and appropriate use thereof, we do not regard as resting either upon correct principle or sound logic.

The street is designed for local convenience and use, and is dedicated thereto; it should be entirely unobstructed, save as

temporary obstructions occur in the improvement thereof by the proper authorities, or in its legitimate use by the public.

An ordinary railroad is not a local convenience; the city is but one of its termini; its cars do not stop at the beck of any one who may wish to ride, and do not commonly transport passengers from one point to another within the city; its ties and rails, as generally laid, are a permanent interference with the use of the street for ordinary vehicles; the smoke and dust, interruption and noise produced by operating its trains, are a perpetual annoyance, and the danger a constant menace, in the occupation and enjoyment thereof for the usual purposes.

We cannot escape the conclusion that such a railroad is an additional burden or servitude, not comprehended within the easement for an ordinary public street or highway. A burden or servitude which the abutting owner cannot be presumed to have anticipated or consented to.

The railroad is a public benefit; it is generally of great advantage to the town or city to or through which it is built and operated, and for any injury or annoyance occasioned thereby, which an adjoining owner shares, in common with the general public, he ought not to recover; but for those damages which are peculiar to him, which affect his property and impair its value without injuring that of his neighbor, he ought in justice to receive compensation.

We are aware that upon some of these questions the Courts are by no means in accord; our views conflict with the decisions of Courts for whom we entertain the profoundest respect. But while this want of harmony is to be regretted, it cannot be avoided, for agreement with all the able decisions is impossible. No attempt has been made to review in this opinion the cases; the task would been too long and laborious. We have not stated exhaustively the reasons controlling the views adopted upon this branch of the case, nor shall we undertake to do so. There are, however, a few subjects and decisions, which we feel called upon to more specifically consider.

A distinction has sometimes been made with reference to the *fee* of the highway. The doctrine is announced and supported by a strong preponderance of authority, that if the fee of the street be in the public, or in the municipality for the use of the public, the Legislature may authorize it to be used for the

construction and operation of a railroad, without compensation to the adjoining property owner, and against his wishes. And of course the Legislature may delegate to the municipal authorities power to grant the same privilege, with like immunity from liability to lot owners along the street occupied. See the following works and the cases cited therein: 2 Dillon Municip. Corp., Sec. 556; Mills on Em. Domain, Sec. 203; Cooley's Const. Lim., p. 687 (5th ed.)

We are not, as may at first seem, ignoring this doctrine, or necessarily denying its correctness under the law prevailing where it has been declared. A careful examination shows that almost without exception, those decisions which consider the subject and deny a right to compensation for injury where the abutting owner does not also own the fee of the street, were rendered under constitutions which require compensation only for the *taking* of private property; and a majority of those opinions are largely occupied in analyzing the word *taken*, and in defining its meaning as used in their respective constitutions.

The Constitution of Colorado contains the following provision: " Private property shall not be taken *or damaged* for public or private use without just compensation."

We believe that the framers of this instrument did not insert the words "*or damaged*" therein, without a purpose; we cannot consent to the proposition that these words add nothing to the word *taken* also used, and that the provision would be just as broad without them; it is hardly necessary to invoke the canon of construction which forbids that we shall consider them as either meaningless or merely cumulative.

The position taken in some of the cases is, that if the adjoining owner have not the fee of the street, and the value of his property be diminished fifty per cent. by the construction of a railroad therein, he has no redress; while if he be the fortunate owner of this fee, he may recover not only for the taking or appropriation of the street, but also for the interference with his easement, and the *decrease occasioned in the value* of his premises.

Yet whether he own the fee or not his rights in connection with the street, while it remains a street, are practically the same. His possession of this fee in no special way contributes

to the use or enjoyment of his lot, and enables him to exercise no greater control over the street, than he would have without it.

This distinction as to the fee seems to rest upon the fact that in one case there is a *wrongful incumbrance* of his *freehold*, while in the other there is not. The actual injury inflicted is about the same in both. But while, if the fee vests in the city, there may be no wrongful incumbrance of his *estate*, in the sense of these cases, there is, under our Constitution at least, a damaging thereof for which he is entitled to compensation.

Constitutional provisions, where only the *taking* of private property is to be compensated, have frequently been held to include any "direct physical obstruction or injury" to the abutting premises, even though there be no actual appropriation of the ground itself; as where by excavation or embankment, water was caused to overflow the same; a kind or class of injuries for which, in the absence of constitutional or statutory enactment, a remedy existed at common law. *The Toledo, Wabash & Westerly Ry. Co.* v. *Morrison,* 71 Ill., 616; *Hooker* v. *The New Haven & N. H. Company,* 14 Conn., 146; *Pumpelly* v. *Green Bay Co.,* 13 Wall., 166.

We think this construction of the provision eminently reasonable and just. Accepting it as correct, we are forced to draw the inference that the words *"or damaged"* with us were intended to reach still another class of injuries. To this class belong, in our judgment, those complained of in the case at bar. Upon this subject see, *Gottschalk* v. *C. B. & Q. R. R. Co.,* (S. C. Neb.) The Reporter, No. 13, Vol. 16, p. 402; also, *Transportation Co.* v. *Chicago,* 99 U. S., and other cases hereinafter considered.

There has heretofore been no interpretation of our constitutional provision by this Court, with reference to damages such as those complained of in the case before us.

The rights of the parties in *Colo. Cent. R. R.* v. *Mollandin,* 4 Colo., 154, accrued prior to the adoption of that instrument; and for this reason, although the decision was rendered subsequent thereto, no mention was made, or discussion had, of the constitutional inhibition. But section 48 of chapter 18, Revised Statutes of 1868, provides that private property shall not be "taken or *injuriously affected*" without compensation. This

statute remained in force till 1876; and it may be urged that the decision in the Mollandin case above mentioned was governed thereby.

We may admit that the words of the statute "injuriously affected," are as comprehensive in meaning as the word "damaged" used in the constitution, and yet not be concluded by the foregoing decision. The statute was not relied upon or discussed in that case; not a word appears in the opinion itself, nor in the briefs and arguments of counsel, to show that it was even remotely considered. The opinion of a Court is not decisive of a question not mentioned therein, although the same might have been passed upon. It is generally a party's privilege to waive a statutory right, and Courts, particularly those of last resort, do not as a rule press upon litigants the benefit of a right or privilege which they have elected not to invoke or claim.

Had the Court been called upon for a construction of that statute, it is probable that a view would have been adopted similar to the one here announced as to our constitutional provision.

The 68 Sec. of the "Land Clauses Consolidation Act," 8 and 9 Vict., Ch. 18, contains the following language: "If any party shall be entitled to any compensation in respect to any lands or interest therein, which shall have been taken for, or *injuriously affected* by the execution of the works, and for which the promoters of the undertaking shall not have made satisfaction," such compensation was to be determined as in the act provided.

It will be observed that this section contains the words "taken" and "injuriously affected" used in our Statute of 1868; and it is not improbable that these words were borrowed either directly or indirectly from Sec. 68 aforesaid, or from some other English act using them in the same connection.

The English courts in interpreting this statute have usually, (not always), held that the words "injuriously affected," only allow compensation where a right of action would have existed at common law. Yet in their application of this construction they have been extremely liberal, sometimes declaring that actionable at common law, which we generally do not so consider.

In *McCarthy* v. *Metropolitan Board of Works*, 7 L. R. C. P., 508, the action was brought to recover for the depreciation in value occasioned to plaintiff's premises by the stopping up and destruction of a certain dock near the same; "plaintiff had no right or easement in the dock, other than his right as one of the public, nor was there appurtenant or otherwise belonging to plaintiff's premises any easment or privilege in or to the dock." But by reason of their proximity thereto, there being only a narrow street between, the buildings were rendered valuable either to sell or occupy; and by the destruction thereof they were permanently damaged and diminished in value. The Court, per Willes, J., say: "Notwithstanding the striking differences of opinion which have been expressed upon this subject, I cannot entertain the slightest doubt that what was done here was an *injurious affecting* of the plaintiff's property which would have given him a cause of action before the statute, and which entitles him to compensation under section 68." The plaintiff's recovery of £1,900 was sustained.

In *The East and West India Docks* v. *Gattke*, 3 McNaughten and G. Reports, 154, defendant professed to have "incurred great pecuniary loss and damage by reason of the construction of the plaintiff's railway in the immediate vicinity of his premises;" he claimed compensation under said act, on the ground that his property was *injuriously* affected.

The Lord Chancellor declines to maintain an injunction preventing defendant proceeding by suit to collect damages for the injury. His Lordship suggests that under this statute a party is entitled to compensation where his lands are not "taken, used, or directly interfered with," but where there is a "consequential" injury, resulting in the actual depreciation of the value thereof.

*Beckett* v. *Midland R'y Co.*, 3 L. R. C. P., 82, was a case where the highway, fifty feet wide in front of plaintiff's premises, was narrowed by means of a railroad embankment to thirty-three feet in width. Plaintiff claimed, among other things, that by the narrowing of the road and the embankment, the value of his property was reduced.

Bovill, C. J., speaking of the property being injuriously affected, under said section 68, says: "I am also of opinion, that, but for the act of Parliament which authorized the mak-

ing of the railway and the narrowing of the road, an action might have been maintained by the plaintiff for such injury, and that he is entitled to claim compensation under the provisions of the acts I have referred to;" and Willes, J.: "I am of the same opinion  *  *  *.  It must be conceded that there was a damage to the owner of the house from the narrowing of the road in front of it.  It is not worth so much to sell or let as it was before.  I will not cite authorities upon a matter which is so plain."

The learned Judge who delivers the opinion in *Rigney* v. *The City of Chicago*, 102 Ill., 64, formulates the rule deducible from the foregoing and other cases in the following language:  If "there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and (if) by reason of such disturbance he has sustained special damage with respect to his property in excess of that sustained by the public generally," the common law would, but for some legislative enactment, afford him redress.  A recovery was sustained where the injury resulted from the construction, without negligence, through the public street of a viaduct by the municipal authorities.

It is immaterial whether or not we declare the English rule thus formulated in Illinois, sufficiently broad to recognize a right of action at common law in cases like this; for whether we so conclude and say with these English cases, interpreting words similar in meaning to those of our constitution, that such language only gives a right to recover where it would have existed at common law; or whether we interpret the provision of our constitution, as did Lord Westbury the English statute, as recognizing a new right of action, the result is the same; in either event parties are entitled to compensation for such injuries as are here complained of.

Lord Westbury, in the case of *Ricket* v. *Directors of Metropolitan R'y Co.*, 2 L. R. Eng. and Irish Appeals, 175, questions the correctness of the above rule as applied to the English statute, in the following vigorous language:  "If this view be correct, it follows that it is a mistake to lay down, as I find in several cases, and in effect in the judgment of four Judges in this case, that the injury intended by the words *injuriously affected*, must be

one of which, if there had been no statute enabling the company to do the act, an action would have laid for the injury at common law." And again, he says: "When, therefore, the general railway acts use the term 'injuriously affected,' the word 'injuriously' does not mean 'wrongfully' or 'unlawfully;' nor does it imply that compensation is limited to cases where the act done is such as but for the powers given would be a tort at common law. The words mean 'damnously affected' only. * * * * There is nothing in the statutes to warrant the position that there shall be no compensation where at common law there would have been no right of action."

In *Transportation Company* v. *Chicago*, 99 U. S., 635, the Court, in speaking of the constitution of Illinois of 1870, say: "It ordains that private property shall not be taken or *damaged* for public use without just compensation. This is an *extension* of the common provision for the protection of private property."

The following cases were decided under constitutional inhibitions similar to ours in this respect; and they assume without discussion, that the words *or damaged* thus used are the recognition by their respective constitutions of a new right of recovery; they do not limit such right to cases where an action would, without the constitutional provision, have lain at common law. *Williams* v. *G. C. and S. F. R'y*, Vol. 1, No. 34, Denver L. J., 267; *Graves* v. *G. C. and S. F. R'y*, 1 Texas Law Review, 8; *Johnson* v. *Parkersburg*, 16 West Va., 402; *Moore* v. *City of Atlanta*, Vol. 1, No. 10, Denver L. J., 78; *City of Atlanta* v. *Green* (Sup. Ct. Ga., Sept. Term, 1881); *City of Elgin* v. *Eaton*, 83 Ill., 535.

The two Texas cases, *i. e.*, those of *Williams* and *Graves*, above mentioned, were brought to recover for injuries, from the use of the street by a railroad. The others were against the cities for damages caused in grading the streets by their respective councils. The right to recover compensation was sustained in all.

As will be observed, we do not go so far as some of these cases; that our position might not be misunderstood, we have, at the risk of being charged with *orbiter dictum*, suggested, that as at present advised we think that for injuries caused by a reasonable change or improvement of the street by the coun-

cil in a careful manner, the abutting owner should not recover.

We now proceed to consider the liability of the city in this case for such compensation. The ordinance before us might perhaps be construed as in no way undertaking to compromise the right of adjoining owners in cases like this to compensation; but simply as granting a license on behalf of the public and the city government, to occupy the street in question; we might possibly regard it as merely a declaration that both the city government and the general public consented to such use of the street, and would interpose no objection or obstacle thereto. To this extent the council had power to act; beyond this it could not go. Under such a view of the ordinance, no one would contend for a moment that the action against the city could be maintained.

On the other hand, if the ordinance in question was intended to confer upon the company a right to use the street for railroad purposes without compensation to adjoining owners, where permanent injury resulted from the use, it is in this respect an effort to authorize something expressly forbidden by the Constitution. The act of the council was a clear usurpation of power not possessed; the ordinance in so far as it denies the right to compensation is *ultra vires* and void. We find no statutory provision authorizing such action by the city council, and if such a statute existed it would also be void.

But if the city council assume, or attempt to assume, powers not conferred, their action is not binding upon the corporation. (2 Dillon, Munic. Corp., Secs. 767, 768, 563, cases cited.) Certainly a municipal corporation cannot be bound by the action of its council sanctioning or attempting to sanction a disobedience of law.

The case of *Stack* v. *The City of East St. Louis*, 85 Ill., 377, cited by counsel, might possibly be thought to recognize a right of recovery in a case like this, upon the doctrine of principal and agent. But we cannot realize the fitness of this application of the rule of agency. If the city council determine to make some change in the street for the benefit of the public, and proceed to do the work, the contractors or employees would be the city's agents; for injuries arising from their unskillfulness or negligence the municipality would unquestionably be

liable.   But the construction of an ordinary railroad is not, as we have found, an improvement of the street for the convenience and benefit of the local public; it is a private enterprise for private profit; true, the city attaches certain conditions to the license granted, such as that the road bed shall be upon a certain grade, that culverts shall be constructed for the gutters and planks laid at the crossings, but otherwise the municipal authorities do not control the enterprise.   Whether we term the railroad company purely a private, or whether we call it a *quasi* public corporation, the situation remains unchanged; in constructing and operating the road it is acting for itself, and not for the city.   It is no more the city's agent, than is the individual licensed by ordinance or resolution, to engage in some legitimate private business requiring such license or authority. If the railroad company disobey the law, in building or operating its road, the city is no more responsible therefor than it would be for a tort of the private individual in the pursuit of his business aforesaid.

The remaining question to be passed upon refers to the measure of damages adopted by the Court. in admiting testimony, and in charging the jury.

Unlike actions for trespass to realty, where the plaintiff can only recover for the injury done up to the commencement of the suit, in suits of this kind a single recovery may be had for the whole damage to result from the act; the injury being continuing and permanent.

After thorough examination of the cases, we are of opinion that the following rule is just and equitable, and that it is sanctioned by the weight of authority:

When the action is against the proper party and the plaintiff is entitled to recover, the measure of his compensation is the actual diminution in the market value of his premises for any use to which they may reasonably be put, occasioned by the construction and operation of the railroad through the adjacent street.

The jury must not, of course, consider any fluctuations in value resulting from other causes.

No personal inconvenience or annoyance, no interference with his trade or business, no decrease in the rental value of his premises occasioned by the construction or operation of the

railroad, and no temporary interruption or damage thereby, constitutes the test. None of these things can enter into the question, except as they may appropriately aid in determining the actual depreciation in market value of the realty and improvements.

If by reason of the proximity of the railroad thereto, plaintiff's property is in any way peculiarily benefitted; that is, if he experiences a benefit therefrom not shared generally by the property owners of the city, such benefit should be considered and the value thereof allowed in determining the amount of his compensation.

The judgment will be reversed and the cause remanded, with directions to the District Court to dismiss the action.

*Reversed.*

*J. C. Stallcup,* City Attorney, *J. P. Brockway, James A. Dawson, Stallcup, Luthe & Shafroth,* for appellant.