## GILBERT v. GREELEY, S. L. & P. R'Y CO.

1. OCCUPATION OF STREET BY RAILROAD — INJURY TO PRIVATE PROPERTY — CONSTRUCTION OF CONSTITUTIONAL PROVISION.— Under article 11, section 15, of the constitution, private property must be taken, or private property must be damaged, before a cause of action arises. The damage must be to the property or its appurtenances; or it must affect some right or interest which the owner enjoys in connection with the property, not shared or enjoyed by the public generally. The damage must differ in kind, not merely in degree.

2. SAME — APPLICATION OF CONSTITUTIONAL GUARANTIES.— It is only when some specific private property, or some right or interest therein or incident thereto, peculiar to the owner, is taken or damaged for public or private use that the constitution guaranties compensation therefor.

3. OBSTRUCTION OF HIGHWAYS — LEGAL GROUNDS OF COMPLAINT.— One traveler has no more legal ground of complaint on account of an obstruction in the public highway than others, unless he be entitled to use the highway at the point of such obstruction for a different purpose than other people, or has suffered some special injury therefrom. The fact that he may be more frequently inconvenienced thereby does not give a cause of action.

*Appeal from District Court of Boulder County.*

THIS action was brought by Richard Gilbert, plaintiff, against the Greeley, Salt Lake & Pacific Railway Company, defendant, to recover damages occasioned to the premises of plaintiff by the construction and operation of defendant's railroad. The cause was tried in the district court without a jury, by stipulation, upon an agreed statement of facts, as follows: "It is agreed that defendant is a railroad corporation, and incorporated for the purpose of building and operating a railroad which should run from Greeley, Colorado, to the town of Boulder, up Penn gulch and westward thereof; that its road was built into the town of Boulder in the year A. D. 1881, and that by an ordinance or license of the town of Boulder, said town of Boulder being then and there an incorporated town, the said defendant was authorized

and permitted to run its road and lay down its track through and along Water street, in said city, from a distance of several hundred feet below and east of Twelfth street, in the said town of Boulder, past and across Twelfth street, westward; that the main line of said road thus running up Water street, which said Water street runs at right angles to Thirteenth and Twelfth streets, crosses Twelfth street at a distance of about two hundred feet from the premises of said plaintiff, hereinafter referred to; that at or near Thirteenth street, a distance of about four hundred feet east of Twelfth street, the said defendant has constructed a side track or switch, which departs from the main line at an angle and runs westerly from said main line and across Thirteenth and Twelfth streets, in said town of Boulder; and that said side track or switch is situate upon lands owned by the said defendant, from at or near said Thirteenth street up to said Twelfth street, and is also extended westerly beyond Twelfth street on the lands of said defendant; that the depot of the said defendant is situated a few hundred feet above Twelfth street; that the lots of said city at that place are laid out and numbered in the plat of the town so as to be of the width of fifty feet each on Front street, and running back from said Front street, south or southerly, to a depth of one hundred and forty feet, to an alley which runs throughout the whole of the block parallel to Front street, and at right angles to said Twelfth street; that at the date of the construction of said defendant's road, in 1881, the said plaintiff was the owner of lots 5 and 6, in block 42, in said town of Boulder; that said lots are situate upon the northwest corner of block No. 42, (and are) each of the width of fifty feet on Front street, with a depth of one hundred and forty feet, to an alley; and that said lots lying on a corner the depth of the outside lot is along and forms the boundary to said Twelfth street for its entire depth, one hundred and forty feet, so that, while the lots are laid out and numbered

and referred to as situate on Front street, yet the whole depth of one of these lots runs along and is situate on east side of Twelfth street; that at the time the road was constructed there was, and ever since has been, thereon a two-story brick dwelling-house of sixteen rooms, fronting upon said Twelfth street, and situate upon the south half of lots 5 and 6, running east and west; that, in constructing its side track or switch, as before stated, defendant placed the same at a distance of about twenty-eight feet south of the line of said plaintiff's property, and that between said plaintiff's line and the lot of the said defendant, upon which its side track is situate, is an alley twenty feet in width, and the same heretofore referred to as running through the entire block 42, the defendant's track being, at the place where it crosses Twelfth street, and the northerly rail thereof, about eight feet south of the north boundary of the lot owned by the defendant, and twenty-eight feet south of the south line of plaintiff's lot on said alley; that, in the use of its side track and switch, the defendant uses it to switch cars across Twelfth street, which causes obstruction to the streets, and thus renders said plaintiff's property less valuable; and that he has thus suffered damages.

"There is no claim that defendant has been guilty of negligence in operating its side track, but the damages claimed are for the usual and ordinary operation of said side track, and not for anything special or unusual in thus operating its side track.

"It is further agreed that defendant has also been allowed and licensed by the said town of Boulder to run across Twelfth street, both with its main track and with said side track, but that plaintiff was never asked for and never did consent to the laying down of said track across said Twelfth street."

By another stipulation it was agreed what the damages should be, in case the court, under the law and upon the facts set forth in the agreed statement, should find that

the plaintiff has a cause of action for more than nominal damages; right of appeal being reserved to either party. The finding and judgment of the court were in favor of defendant. Plaintiff appeals, under the act of 1885.

Mr. R. H. WHITELY, for appellant.

Messrs. TELLER & ORAHOOD, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The matters requiring consideration in this case appear somewhat complicated at first, though they are really quite simple. In general terms they may be stated thus: A railroad company lawfully constructs and operates its road, without negligence, in the immediate vicinity of private real property, but without touching the same. It builds and operates the road across a public street upon which such real property is situate, though not in front of the same, and thereby causes obstruction to the street by passing trains, and thus renders such property less valuable. Under such circumstances has the owner of the property a cause of action against the railroad company for the damages thus occasioned?

Before considering the legal aspects of this question let us take a further survey of the premises. The main line of defendant's road runs through Water street, about two hundred feet distant from the plaintiff's property. Between the main line and plaintiff's property lies the south half of block 42, which is the private property of defendant, through which defendant's side track runs. Plaintiff's property consists of a piece of land one hundred and forty feet in length by one hundred feet in width, situate in the north half of block 42, being the northwest corner of said block, and is bounded on the north by Front street, on the west by Twelfth street, and on the south by the alley separating the north half of block 42 from the south half. The streets are eighty

feet in width and the alley twenty feet.    Plaintiff's house
is situate upon his premises adjoining the alley, and
fronts on Twelfth street.    The main line of defendant's
road and also the side track cross Twelfth street; the
former two hundred feet south òf plaintiff's premises
and the latter twenty-eight feet south.

From this it appears that the streets and the alley bor-
dering on plaintiff's premises, and by which he gains ac-
cess thereto, are entirely unobstructed.    The *corpus* of
his property is not affected by any physical contact with
the railroad tracks, nor is any street or alley, so far as
the same borders on his premises, in any way interfered
with.    Twelfth street and the alley, so far as plaintiff's ·
property abuts upon them, are entirely unobstructed,
and Front street is entirely untouched by the railroad.
It is true, when plaintiff goes southward on Twelfth
street, he encounters the side track at a short distance
from his house, and the main line a little further on; but
in this respect he is affected in the same manner only as
the general public.    It does not appear that his use of
Twelfth street to the southward of his premises is other
or different than that of the general public.    He may or
may not use the street more frequently in that direction
than other people; but that is not the test.    One traveler
has no more legal ground of complaint on account of an
obstruction in the public highway than others, unless he
be entitled to use the highway at the point of such ob-
struction for a different purpose than other people, or has
suffered some special injury therefrom.    The fact that
he may be more frequently inconvenienced thereby does
not give a cause of action.

From the agreed statement of facts upon which this
cause was tried it appears that the damage suffered by
plaintiff on account of the proximity of defendant's side
track and main line arises solely from the obstruction to
Twelfth street caused by passing trains.    No other kind
of damage is specified, and we are not at liberty to infer

or surmise other or different kind of damage. It is clear that in the matter of such obstruction he suffers only in common with the general public. His damage, therefore, may or may not differ in degree. It certainly does not differ in kind from that of the general public. It must not be understood from the foregoing that physical contact with the *corpus* of the property is a necessary condition precedent to an action for damages.

The constitution of Colorado, article 2, section 15, provides "that private property shall not be taken or damaged for public or private use without just compensation." It is admitted that the use of defendant's side track for switching cars across Twelfth street causes an obstruction to the street, renders plaintiff's property less valuable, and that plaintiff had thus suffered damages. Hence it is claimed with much confidence that by this admission the plaintiff's cause of action is established. Let us examine this claim. The constitutional provision above quoted has already received the careful consideration of this court, and has been clearly construed in its application to certain facts and circumstances; but the determination of this case will require its further consideration and construction. Private property must be taken, or private property must be damaged, before a cause of action arises. The damage must be to the property, or its appurtenances, or it must affect some right or interest which the owner enjoys in connection with the property, and which is not shared with or enjoyed by the public generally. It is insisted, however, that by the wording of the agreed statement the real property belonging to plaintiff, as described therein, is admitted to be damaged, in that it is rendered less valuable by defendant's use of Twelfth street for railroad purposes. Even this admission is not sufficient, of itself, to give a complete cause of action. The fair import of the agreed statement is that the damages which the plaintiff suffers are all referable to the obstruction in Twelfth street.

While it is admitted that plaintiff's property is rendered less valuable by reason of such obstruction, yet, to bring the case within the meaning of the constitution, it must also appear that he has some special private property, right or interest, as a private right of way or user, in Twelfth street, at the point of obstruction, other or different from the right or interest of the general public, and that such property, right or interest of plaintiff has been damaged for public use.

Notwithstanding the broad terms of our constitution, and the unqualified expressions of certain judicial opinions, we are not prepared to say that whenever a depreciation in private property is caused by some public or private improvement the owner of the property thus depreciated may recover compensation against the party making such improvement. It is probable that, in consequence of every improvement resulting from new inventions or discoveries, the private property, rights or interests of some person or persons have been damaged or injuriously affected. In many instances the construction and operation of railroads have driven stage companies and post-chaises out of existence, and rendered the property invested therein, as well as such business, comparatively valueless. It is sometimes asserted that railroads are an advantage to large places, but a disadvantage to small ones. Undoubtedly, a small village may be seriously injured by the construction and operation of a railroad in its vicinity, provided it does not come near enough for the convenience of trade and travel by its inhabitants. We are not aware, however, that it has ever been contended in such cases that the proprietors of such stage routes, or the property owners in such villages, have a cause of action against the railroad companies for the depreciation of their property.

It may be susceptible of demonstration that every railroad company running its trains across a street or public highway causes damage or inconvenience in a greater or

less degree to every traveler having occasion to use the street or highway at the point of such crossing, as well as to every person owning or occupying real estate anywhere in the vicinity of such crossing; and yet there is no remedy for such damage, under ordinary circumstances, for the reason that as a general rule no one has any special, private property or interest in the public highway other or different from the general public, and the damage thus suffered is common to all having occasion to use the street or highway. In such case, therefore, private property cannot be said to be taken or damaged for public use, within the sense or meaning of the constitution. It is only when some specific private property, or some right or interest therein or incident thereto, peculiar to the owner, is taken or damaged for public or private use that the constitution guaranties compensation therefor. *City of Denver v. Bayer*, 7 Colo. 113; *Railroad Co. v. Nestor*, 10 Colo. 403; *Whitsett v. Railroad Co.* 10 Colo. 243; *Rude v. City of St. Louis*, 93 Mo. 408; *Morgan v. Railway Co.* 64 Iowa, 589; *Shaubut v. Railroad Co.* 21 Minn. 502.

These views are in harmony with those expressed upon the question considered in *City of Denver v. Bayer, supra.* In that case it was held that the owner of property abutting on a public street had a special property, an easement, in the street in front of or adjacent to his own property, for the purposes of ingress and egress to and from such property; that for such purposes he had a peculiar interest in the street different from that of his neighbors or the general public; and that, if such easement were taken or damaged for public or private use, it was a taking or damaging of his property, within the meaning of the constitution, for which he was entitled to just compensation. In this case it is not shown that the obstruction was at a place affecting the ingress or egress to or from plaintiff's property. Certainly, it cannot be maintained that every person owning property

abutting upon a street or public highway has a special property in such street or highway, throughout its whole extent, other or different from his neighbors or the general public, on the ground that it is an easement by which access is gained to his private property. Such was not the purport of the decision in the *Bayer Case*, and such cannot be the meaning of the constitution.

In the case of *Jackson v. Kiel, ante*, p. 378 (decided at this term), the property was held to be damaged by a railroad crossing one hundred and thirty-two feet distant; but the property in that case was situate on a *cul-de-sac*, and the occupation of the street for railroad purposes was such as to completely cut off access to the property by means of vehicles; yet in that case Chief Justice HELM was careful to say that the owner " could not recover for any general inconvenience thus occasioned, which he may have suffered in common with the general public; but for the special and peculiar injury shown in this case he was doubtless entitled to compensation."

Counsel for appellant asks us to follow the case of *Rigney v. City of Chicago*, 102 Ill. 80, in which the supreme court of that state, construing a constitutional provision similar to ours, say: " In all cases, to warrant a recovery, it must appear there has been some direct, physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage, with respect to his property, in excess of that sustained by the public generally."

We cannot see that the application of this rule to the facts before us will save the plaintiff's case. In the first place, wherein has it been made to appear that the obstruction resulting from the railroad crossing causes any *direct, physical disturbance of a right which the plaintiff enjoys in connection with his property?* The right to use and enjoy Twelfth street is a right belonging to him

without connection with his property, without reference to his property. It is a right which he shares in common with the highest and humblest of his fellow-citizens, without regard to any other right, interest or property which he may possess. As we have seen, nowhere in the agreed statement does it appear that plaintiff makes any special use of Twelfth street at the point of the railroad crossing, either in connection with his property or for any other purpose. How, then, can the disturbance of his right to the use of Twelfth street cause him to sustain special damage with respect to his property? For aught that appears, any inhabitant of the town, though not having property on Twelfth street, may use the street at the point of the crossing as much as the plaintiff, and thus suffers as much damage by means of the obstruction. So it is evident that the damage caused to plaintiff by the obstruction is not special, but general, or such damage as he suffers in common with the general public, who may or may not own property on Twelfth street, in the vicinity of the crossing. Plaintiff's damage, as before stated, may differ in degree, but not in kind. It is therefore not special, in the proper sense of that term.

But it is insisted that the rule allows a recovery when the damage is merely in excess of that sustained by the public generally. Giving the rule this broad interpretation, it avails plaintiff nothing in this case; for, as we have seen, it does not appear by the agreed statement that plaintiff's damage exceeds in any degree that of the public generally. But this is not our construction of the rule in the *Rigney Case*. Considering the facts of that case in the light of the whole opinion, and in connection with the entire rule, as above quoted, we are of the opinion that the clause in which the word "excess" appears must be construed as meaning damage different in kind from that sustained by the public generally. To hold that damage may be recovered when the difference is in degree merely, would lead to difficulties practically insur-

mountable. It would necessitate determining the damage sustained by the public generally as a basis upon which to calculate the excess sustained by the plaintiff. This, in turn, would involve a variety of troublesome questions. For example, who are to be considered the "general public," in such cases? Are they the people who own real property in the vicinity, or those who do not? Are they those who live near, or those who live remote from, the crossing? Or are they those who have neither property nor residence in the vicinity? None of these difficulties can arise under the rule as expressed in this and the former opinions of this court.

An analysis of other cases relied on by counsel for appellant will show that they are clearly distinguishable from the present case, though it must be admitted that the constitutional provision under consideration has, in some states where it exists, received a construction somewhat variant from the views expressed in this opinion. Nevertheless, we think, upon principle as well as by the better authorities, we have given a consistent and reasonable construction to the language of our constitution,— a construction capable of definite application, and which, as a general rule, is calculated to secure substantial justice, without involving litigants in unnecessary difficulties respecting their legal rights and liabilities. The judgment of the district court is affirmed.

*Affirmed.*