## No. 9311.

### DENVER UNION TERMINAL RAILWAY COMPANY *v.* GLODT.

1. PUBLIC HIGHWAYS—*Closing—Injury to Private Property.* The owner of lands abutting upon a street which by public authority is closed in part, but not upon that part of it so closed is entitled to compensation if special and peculiar damage is occasioned to him, e. g., where the premises are cut off from all manner of ingress and egress. The damages recoverable must be shown to affect the premises,, or their appurtenances, or some right or interest enjoyed by the owner in connection with the property, not shared by the public.

The evidence examined held to establish that plaintiff's easement of access was seriously invaded.

2. REAL PROPERTY—*The Easement of Access,* entitles the owner of the lands to which it is appurtenant to the use of such streets and ways as are reasonably necessary to the beneficial enjoyment of such lands. It extends to the full width of the street or way, affording access.

.3. MUNICIPAL CORPORATION—*Obstruction of Streets—Liability.* A railway corporation whose tracks and other structures obstruct a public street, preventing access to private property, is liable to the owner of such property, even tho acting with the consent of the municipality; and even tho the municipal authorities vacate such street, and present it as a gift to the railroad company.

*Error to Denver District Court, Hon. John A. Perry, Judge.*

Messrs. HUGHES & DORSEY, Mr. JOHN Q. DIER, Mr. E. N. CLARK, Mr. J. G. MCMURRY, for plaintiff in error.

Mr. JOHN A. RUSH, Messrs. THOMAS & THOMAS, for defendants in error.

Opinion by Mr. Justice Allen:

THIS is an action brought by John J. Glodt and Albert Glodt, hereinafter referred to as the plaintiffs, against The Denver Union Terminal Railway Company, as defendant, to recover damages for the depreciation of the rental and market value of plaintiffs' property, caused by the closing

and vacation of parts of certain streets in the City and County of Denver, and the building of a viaduct approach.

The property of the plaintiffs, alleged to have been damaged, is described as lots 13 and 14, in block 5, of Hoyt & Robertson Addition to the City of Denver. This block lies between, and is bounded on the easterly and westerly sides respectively by Division Street and Nineteenth Street. Division Street, as it runs in a southerly direction, terminates at the southeast corner of the block in question, and just before so ending intersects or crosses Twentieth Street diagonally. The block is bounded on its southerly side by Delgany Street. The plaintiffs' lots are located practically in the southeast corner of the block; they are each 125 feet deep and 25 feet wide, having a frontage of 50 feet on Delgany Street. There is no alley in the rear of the lots, and prior to the time of the injury complained of, the plaintiffs' property had two approaches and exits with reference to the business section of the city—one west on Delgany Street to Nineteenth Street, and the other east on Delgany Street to Twentieth Street. The business section of the city lies south of the plaintiffs' property and of Delgany Street.

The location of the plaintiffs' property with reference to the streets herein mentioned, and, in general, the facts hereinafter noted, will more clearly appear by reference to the following plat:

NOTE.   PLAINTIFFS' LOTS 13 AND 14, BLOCK 5, ALLEGED TO HAVE BEEN DAMAGED, ARE INDICATED ON THE PLAT THUS: ✳

It is alleged in the second amended complaint that "the premises of the plaintiffs have been pocketed, and cut off from all practicable or reasonable means of ingress and egress with any part of the .city, and have been wholly pocketed and cut off from all means of ingress and egress to and from the business part of the city." This situation is alleged to be the result of the construction and maintenance, by the defendant, of a permanent approach or viaduct along plaintiffs' premises, and the closing and vacation of a certain portion of Nineteenth Street and a part of Twentieth Street.

Various defenses were interposed to the complaint. The cause was tried to a jury, and the trial resulted in a verdict for the plaintiffs. Subsequently a motion for a new trial was overruled, and judgment for plaintiffs entered on the verdict. The defendant brings the cause here for review.

The main contention of the defendant is that "any depreciation in the value of the plaintiffs' lots resulting from the vacation and closing of Nineteenth Street is *damnum abseque injuria.*" Numerous cases are cited and discussed in reliance upon what is presented by the defendant as a general rule that "only property abutting upon the portion of the street closed is specifically damaged by the vacation, and that only such abutter can recover damages or compensation for the taking of his property."

The rule above mentioned is invoked by the defendant on account of the fact that the plaintiffs' lots do not abut upon the vacated portion of Nineteenth Street, nor upon Nineteenth Street at all. The part of that street that was closed and vacated, and the vacation of which the plaintiffs complain, lies beween Delgany Street and Wynkoop Street, all such vacated portion of Nineteenth Street lying south of the intersection of Nineteenth and Delgany Streets.

The cases in this and in other jurisdictions, which denied a recovery to one whose property was located on another street, or on a different part of the street vacated or obstructed, were generally cases where such plaintiff or com-

plainant was not deprived of the only reasonable means of access to his property. 13 R. C. L. 74, sec. 65. There are authorities holding that one whose property does not abut upon the street or part of the street which is vacated is entitled to compensation where all access to his property to the system of streets in one direction is cut off. 28 Cyc. 1083.

We can not, either upon principle or authority, announce or follow, as a rule of law, the proposition stated by defendant's counsel that "a plaintiff can not recover for the vacation or obstruction of a public street unless the portion vacated or obstructed is in front of his property." The correct rule, applicable in the instant case, is that the owner of property which does not abut on the part of the street closed is entitled to compensation, provided he is able to prove special and peculiar damage. As said in 15 Cyc. 666, "even a non-abutting owner has a right to compensation if his right of access is entirely cut off, or is impaired to a substantial degree."

The point to be determined, therefore, in connection with the defendant's contention that the depreciation in the value of plaintiffs' lots resulting from the vacation of Nineteenth Street is *damnum abseque injuria,* is whether or not the plaintiffs suffered any damage differing in kind from that sustained by the general public, by reason of the vacation of a part of Nineteenth Street. If the plaintiffs did suffer such damage, they are entitled to recovery. *Pueblo v. Strait,* 20 Colo. 13, 36 Pac. 789, 46 Am. St. Rep. 273, 24 L. R. A. 392.

The damage, for which recovery may be had, "must be to the property, or its appurtenances, or it must affect some right or interest which the owner enjoys in connection with the property, and which is not shared with or enjoyed by the public generally." *Gilbert v. Greeley, etc., Ry. Co.,* 13 Colo. 501, 22 Pac. 814.

The private right or interest, for the invasion of which the plaintiffs seek compensation, is the easement of access

which is appurtenant to their lots. The destruction or infringement of such easement or right is a loss or damage different in kind from that suffered by the rest of the community, and for such damage compensation may be recovered under section 15, article II, of the Constitution, which provides "that private property shall not be taken or damaged for public or private use, without just compensation." *Pueblo v. Strait, supra; Longmont v. Parker,* 14 Colo. 386, 23 Pac. 443, 20 Am. St. Rep. 277.

The closing of Nineteenth Street south of Delgany Street entirely cut off the plaintiffs' principal way of egress to the business part of the city. The plaintiff could not, either before or after the vacation complained of, proceed further westerly on Delgany Street after reaching Nineteenth Street, at the end of their block, because Delgany Street, as an open thoroughfare, terminates at Nineteenth Street. They would find no means of egress to the business section of the city by going a reasonable distance northerly along Nineteenth Street, for there are no traveled cross streets in that direction, and the territory for some distance on both sides of the street is occupied chiefly by railroad tracks and yards. All access, therefore, from plaintiffs' property to the system of streets in one direction was cut off. Furthermore, it was the one direction they had been accustomed to use, and the most convenient way of reaching the business section of the city. As one of the plaintiffs testified, "the main way was along Delgany Street to Nineteenth Street, and along Nineteenth Street; * * * the other way (via Twentieth Street) was hardly ever used."

Prior to the closing of Nineteenth Street, the plaintiffs could also reach the business section of the city by taking Twentieth Street to Wewatta Street, one block south, and thence along Wewatta Street westerly to Nineteenth Street, and along Nineteenth Street southerly to the city. This way was obstructed and closed by reason of the vacation of portions of Twentieth Street and of Wewatta Street, by the same ordinance which vacated the part of Nineteenth Street

theretofore used by plaintiffs. Prior to the trial of this action, however, the defendant provided a drive-way between Nineteenth and Twentieth Streets, along Wewatta Street, whereby Twentieth Street could be used to about the same extent as before it was vacated. In this connection it should be noted that Twentieth Street, for a long distance both north and south of Delgany Street, is traversed by the Twentieth Street viaduct, and plaintiffs' egress by way of Twentieth Street is and was under the viaduct. Various circumstances make the driveway provided by defendant, and Twentieth Street beneath the viaduct, inadequate as a reasonable means of access to and from the plaintiffs' lots. Such road is narrow. Furthermore, it is crossed by numerous railroad tracks, frequently used by railroad trains, and for this reason is dangerous. The viaduct, above this roadway, is supported by steel columns with steel girders connecting some of the columns. It is impossible to travel along Twentieth Street directly under the viaduct because of the cross girders. Traffic must therefore go along the easterly side of the street. That Twentieth Street, under the viaduct, is unsuitable as a public highway seems to be indicated by the building and maintenance of the viaduct approach, involved in this action, which was constructed for the evident purpose of enabling travel coming from the north on Nineteenth Street to go to the business part of the city over the Twentieth Street viaduct, instead of being compelled to take the way lying beneath the viaduct. In addition to this approach, the map in the abstract of the record shows another viaduct approach on the easterly side of the Twentieth Street viaduct, built along Delgany Street.

We are of the opinion that, under the circumstances shown by the evidence, the plaintiffs' easement of access was substantially impaired and seriously invaded by the closing of Nineteenth Street, and that, therefore, special damage was sustained. The easement of access is broad enough for the beneficial enjoyment of the property to

which it is appurtenant. *Reining v. New York, L. & W. Ry. Co.*, 13 N. Y. S. 238. It includes the right to the use of such streets as are reasonably necessary for the enjoyment of the property. *Highbarger v. Milford*, 71 Kan. 331, 80 Pac. 633. It appears from the statement of facts herein contained, and the evidence in the record, that Nineteenth Street was reasonably necessary for the enjoyment of plaintiffs' property. After Nineteenth Street was closed, the plaintiffs could not make use of Delgany Street in the same manner as they could prior to that time, since that street then no longer connected with the principal way of reaching the city. In *Indiana v. Eberle*, 110 Ind. 542, 11 N. E. 467, 59 Am. Rep. 225, the court said:

"The interest in the street which is peculiar and personal to the abutting lot owner, and which is distinct and different from that of the general public, is the right to have free access to his lot and buildings, substantially in the manner he would have enjoyed the right in case there had been no interference with the street."

The foregoing was approvingly quoted in *Vanderburgh v. Minneapolis*, 98 Minn. 329, 108 N. W. 480, 6 L. R. A. (N. S.) 741. There was evidence in this case that, prior to the vacation of Nineteenth Street, the main route of surface travel from the business portion of the city to the neighborhood in which plaintiffs' premises are located was along Nineteenth Street from the business section of the city northerly to Delgany Street, thence along Delgany Street, past plaintiffs' lots, to Division Street, and thence along Division Street. Such route of travel was a highway, of which Delgany Street was a part, and the now vacated portion of Nineteenth Street was a part. This is another circumstance showing the invasion of plaintiffs' right of access by the vacation of Nineteenth Street. In *Park City Yacht Club v. Bridgeport*, 85 Conn. 366, 82 Atl. 1035, 39 L. R. A. (N. S.) 478, it was held that the vacation of a part of a street which destroys all access by property abut-

ting on the remaining part of the street to the system of streets in one direction is an actionable injury.

The facts in the instant case are sufficient to bring it within the rule stated in *Denver v. Bayer*, 7 Colo. 113, 2 Pac. 6, where this court said:

"Whatever permanently prevents the adjacent owner's free use of the street for ingress and egress to or from his lot, and whatever interference with the street permanently diminishes the value of his premises, is as much a damage to his private property as though some direct physical injury was inflicted thereon."

For the reasons above indicated, the defendant's contentions, as hereinbefore noted, can not be sustained. There was no error in admitting evidence relating to the vacation of Nineteenth Street, nor in the instruction to the jury whereby it was permitted to render a verdict for the plaintiffs if it found from the evidence that the closing of Nineteenth Street materially interfered with the reasonable means of access to and from the plaintiffs' property.

Another contention of the defendant, as stated in its brief, is that "the construction and maintenance of the new or Nineteenth Street approach to the Twentieth Street viaduct has created no cause of action in favor of the plaintiffs."

This contention can not be sustained. It is based chiefly, if not entirely, on the fact that the viaduct approach is built upon the southeasterly one-half of Delgany Street, while plaintiffs' property abuts on the northwesterly one-half of the street. Such fact does not sustain the contention, for the reason that plaintiffs' easement extended to that part of the street upon which the viaduct approach was built. The easement of access extends to the full width of the street. 15 Cyc. 748, 13 R. C. L. 143, sec. 125. An abutting proprietor is entitled to the use of the street in front of his premises to its full width as a means of ingress and egress. *Williamette Iron Works v. Oregon R., etc., Co.,*

26 Ore. 224, 37 Pac. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88.

The approach in question commences about 160 feet northwesterly from the northwesterly line of Delgany Street, in Nineteenth Street, then runs along Nineteenth Street to the intersection of Nineteenth and Delgany streets, where it turns and leads to the top of the Twentieth Street viaduct. It consists of solid concrete along Nineteenth Street and for the first fifteen feet on its course along Delgany Street, so that Nineteenth Street can not be crossed at the point of its intersection with Delgany Street. The approach extends along the entire front of plaintiffs' lots, at a distance of 25 feet therefrom, and is, at that place, about 30 feet above the ground. The viaduct approach has narrowed the traveled part of the natural surface of Delgany to one-half of its former width, if not less. These facts are sufficient to bring the case within the rule announced in *Pueblo v. Strait, supra,* allowing the owner of abutting property to recover damages when the means of ingress and egress to his property is obstructed or injured by the construction of a viaduct. This rule is applicable even though the viaduct does not occupy the entire width of the street. *Bagnall v. Milwaukee,* 156 Wis. 642, 146 N. W. 791.

A further contention of the defendant is, as stated in its brief, that "if any cause of action exists in favor of the plaintiffs with reference to the closing of Nineteenth Street, it is against the City and County of Denver, alone," and that there is no liability on the part of the defendant company.

The defendant was incorporated in 1913, under the name of The Denver Union Terminal Railway Company, and was organized for the purpose of reconstructing and enlarging the railroad terminal facilities in Denver. It is practically the representative of six railroad companies whose lines enter Denver, and who require and make use of the terminal improvements.

On June 25, 1914, the City and County of Denver enacted

an ordinance which vacated a portion of Nineteenth Street. It is the closing, by the defendant, of this vacated portion of Nineteenth Street, of which the plaintiffs complain. The ordinance in question further provided that such portions of streets as are thereby "vacated and abolished" are "appropriated to The Denver Union Terminal Railway Company, its successors and assigns." At the time of the passage of this ordinance the defendant owned and was in possession of the real estate lying on each side of the portion of Nineteenth Street that was vacated. After the ordinance was enacted the defendant commenced its reconstruction work, and the same resulted in the obstruction and closing of the street, in the physical sense, by reason of train sheds and numerous train platforms. 'The injury on account of which the plaintiffs, in this connection, sought compensation, was that resulting from "the closing of Nineteenth Street to travel and its occupancy by the tracks and train sheds of defendant."

The argument of the defendant, in support of the contention now being considered, appears to be based, in part at least, upon the theory that Nineteenth Street was closed to travel, not by the physical obstructions placed by the defendant across the street, but by the act of the city in vacating the street by ordinance, and that since the street was vacated by ordinance prior to the time the defendant placed the obstructions thereon, the plaintiffs have no cause for complaint or right of action against the defendant. This theory is not tenable, under the evidence in this case.

The record fairly shows that the vacation of the street, by ordinance, was intimately connected not only with the defendant's existing terminal facilities, but also with its contemplated additional improvements, which were afterwards built.

The ordinance which vacated a portion of Nineteenth Street also vacated portions of Wewatta, Twentieth and Sixteenth Streets, and all such vacated parts of streets were, in the same ordinance, "appropriated" or granted to the

defendant. On the same day that this ordinance was passed, the council of the City and County of Denver passed another ordinance, and this enactment provided for the construction by the defendant, principally if not wholly at its own expense, of the approach to the 20th Street viaduct, being the viaduct approach described in a previous part of this opinion. The undisputed facts show that the necessity for the building and maintenance of the approach to the 20th Street viaduct was occasioned by the closing of 19th Street, and that the closing of that street was caused by the enlargement of, and the additions to, the defendant's terminal facilities. The defendant itself, in its brief, says:

"On account of the proposed increase in the number of terminal tracks and their extension easterly over and across 19th Street, together with the train platforms and umbrella sheds serving same, a continuation of 19th Street as a surface highway between Wewatta and Delgany Streets became an impossibility."

The foregoing facts show that 19th Street would have been obstructed, and totally destroyed as a public way, by the defendant's tracks, platforms and sheds, irrespective of any vacating ordinance. In the absence of such an ordinance, the defendant would be liable for such obstructions or such destruction of the thoroughfare, even if the same were with the city's consent. A corporation occupying the streets of the city with the city's consent is primarily liable for the injury caused to abutting owners, and not the city itself. 15 Cyc. 786; *Denver v. Bayer, supra.*

In the instant case, the city council did more than merely give its consent to the use of 19th Street by the defendant; the municipality practically donated the street to the terminal railway company. This fact does not "in any way militate against the right of the plaintiff (a) to compensation from the defendant for the damages" they may have sustained. *Stehr v. Mason City & F. D. Ry. Co.,* 77 Nebr. 641, 110 N. W. 701, 124 Am. St. 872. A holding to the contrary would tend to establish a rule whereby a railway com-

pany could avoid paying damages occasioned to property by its appropriation of a street, in any case where the city council vacates the street for the benefit of such company instead of merely granting its consent to the use of the street. By such a rule a city council, by the cheap expedient of declaring a street vacant and then presenting the way as a gift to the railroad company, could evade the law made for the protection of property owners.

There is no principle of law, controlling in the instant case, which requires us to sustain the defendant's contention. There is, however, a principle on which the defendant must be held liable, resulting from the fact that it was the defendant company that reaped the benefits of the vacating ordinance. The company took full advantage of the vacation of 19th Street, taking possession of the vacated part thereof, and constructing its train sheds and train platforms thereon. This advantage was taken at the earliest convenient time. The vacation of the street by the city, the city's grant of the vacated part of such street to the defendant, and the defendant's immediate appropriation and use of the same, should be regarded as one enterprise or transaction, carried out for the benefit of the defendant. This is sufficient to fix the liability upon the defendant, instead of upon the city, upon the principle running through several decisions of this court in the early cases, particularly *Denver v. Bayer, supra,* and *Sorensen v. Town of Greeley,* 10 Colo. 369, 15 Pac. 803, of which decisions this court in the recent case of *Colorado Springs v. Stark,* 57 Colo. 384, 140 Pac. 794, said:

"These decisions are based upon the broad and equitable principle that those who reap the benefits of improvements must bear the burden of compensating for any loss occasioned in securing them. They depend upon the proposition that where the use inures primarily to the profit and advantage of individuals, or to private or quasi public corporations, just compensation for injury thereby occasioned

must be made to the abutting property owner by those so benefited."

The defendant complains of the rejection of certain testimony, and errors are assigned covering the trial court's rulings in this matter. We find no reversible error in this connection.

Other matters discussed in the brief of the defendant, do not establish any ground for a reversal of the judgment.

The judgment is affirmed.

Affirmed.

Chief Justice Garrigues and Mr. Justice Scott concur.