[No. 6764.]

## HARRISON, ADMINISTRATOR, v. DENVER CITY TRAMWAY COMPANY.

1. STREET RAILWAY—*Damage to Private Property*—Under sec. 11 of art. XV of the constitution, and sec. 5420 of the Revised Statutes, those who by license of a city, construct a railroad upon the streets thereof, stand, as to any liability to make compensation for private property taken or damaged, in the place of the city.

2. CONSTITUTIONAL LAW—*Private Property Taken for Public Use*—A physical taking of private property for public use need not be shown in order to entitle the owner to compensation; but it must appear that some right, or interest pertaining to the property has been destroyed or impaired, before an action can be maintained. The right disturbed may be public or private, but it must be a right enjoyed in connection with the property, not shared with the public generally, a right which gives it an additional value and by the disturbance of which the property itself is damaged.

A municipality may devote its streets to all those ordinary and necessary uses to which streets are usually subjected, and to such local uses and means of conveyance as the law-making power may authorize, for the thoroughfares of the entire city. Incidental injuries occasioned by the careful exercise of such rights granted pursuant to this power are *damnum absque injuria.*

As to extraordinary or unusual uses, or unreasonable changes, or injuries to abutting property through faulty or improper construction, the rule is otherwise.

But the proper construction of a street railway, with due regard to existing local conditions, does not so augment the servitude upon the street as to entitle the owner of property abutting thereon, to compensation.

Nor does the mere fact that the tracks of a railway are laid so close to abutting property that vehicles may not stand between them and the sidewalk.

The annoyances, discomfort, and injury, suffered by the abutter from the ringing of bells, and loud and discordant noises produced by the cars in passing over the tracks and around curves, are, excepting as to degree, suffered by the public generally so far as such noises and vibrations are heard and felt, and give no action.

The abutter is, however, entitled to receive at, or remove from his premises, persons or goods, and to have vehicles stand in front thereof upon the street, for the time reasonably necessary for this purpose, even though this may temporarily interfere with the passage of others; and if this right is interfered with he may have redress therefor in a proper action.

*Error to Denver District Court.*—Hon. HUBERT L. SHATTUCK, Judge.

Mr. R. T. McNEAL, for plaintiff in error.

Mr. GERALD HUGHES and Mr. HOWARD S. ROBERTSON, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

December 9, 1907, Mary V. Macon brought suit against The Denver City Tramway Company for damages claimed to have been sustained as a result of injury to her residence property. The complaint, as amended, alleges, in substance, that since November, 1890, the plaintiff has owned and been in possession of two described lots at the corner of Ogden street and 11th avenue, in the city and county of Denver, together with a two and one-half story brick dwelling house of fourteen rooms, situate thereon, and occupied by her as a residence; that prior to certain acts of defendant, hereinafter set forth, the plaintiff's property was of great value as a dwelling, and the location thereof one of the most desirable in the city; that Ogden street extends in a northerly and southerly direction and is thirty feet wide between the curbs in front of plaintiff's residence; that 11th avenue extends in an easterly and westerly direction; that for ten years prior to 1907 the defendant, under a franchise from the city, operated a double track electric street car line from the business section of the city on 11th avenue to its intersection with Ogden street; thence on Ogden street north by curves to 12th avenue; thence east to Fillmore street; that in the summer of 1907 the defendant, under its franchise, extended its 11th avenue car line from Fillmore street, fifteen blocks eastward, and connected the same with its Fairmount line, and, over the protest of plaintiff, likewise constructed an additional line from its southerly track on 11th avenue, by a sharp curve, into and upon Ogden street to 9th avenue; thence easterly and then northerly through Downing street to 11th avenue, and thence west to an intersection with

its tracks at 11th avenue and Ogden street; that in front of plaintiff's residence the west rail of defendant's tracks on Ogden street is thirteen feet, at its most remote point, from the curb, and at its least remote point three feet therefrom; that the cars upon said track pass within about thirty-five feet of the front of plaintiff's residence, while the cars on 11th avenue pass within about forty feet of the north line thereof; that since the construction of the extended and additional lines defendant has run, and continues to run, its electric cars past plaintiff's house over such tracks at the rate of forty cars per hour; that prior to the construction of such additional lines south through Ogden street, visitors and others wishing to approach plaintiff's residence, by carriage, automobile, or other vehicles, were accustomed to alight and leave their vehicles in safety in front of her residence; that subsequently thereto they have been deprived of such privilege by the frequency with which cars are operated upon said tracks, and are compelled to alight at the rear entrance on 11th avenue, or elsewhere than at the side-walk in front of her residence; that the frequent passage of cars over the curves of the tracks makes a loud, grinding, shrill and nerve-racking noise, and jars the building, and creates almost a constant rumbling, disturbing sound, accompanied by the ringing and clanging of alarm bells and danger signals; that it is thereby made impossible, the greater portion of the time, for inmates of her home, or visitors therein, to conduct, on the veranda or in the front rooms, conversation in an ordinary tone of voice, or enjoy any form of social intercourse or entertainment during the day or evening, or enjoy undistrubed sleep at night, or occupy the house with any degree of comfort or quietude; that by reason of such things, the rental and selling value of her property has been greatly depreciated to the plaintiff's damage, etc.

A demurrer to the amended complaint was sustained and the plaintiff brings the cause here for review. The demurrer, *inter alia*, challenged the sufficiency of the facts stated to constitute a cause of action.

Section 11 of article XV of the constitution inhibits the construction of a street railroad in any city without the consent of the local authorities having control of its streets. Section 5420, R. S. 1908, re-enacts, in effect, the constitutional provision, and further declares, substantially, that the consent upon the part of a city to the construction of a street railroad therein shall not operate to relieve or protect those constructing the road, etc., "against any claim for damages to private property, which otherwise, without such consent, might be lawfully miantained against" the persons constructing the road. Section 15 of article II of the constitution declares "that private property shall not be taken or damaged, for public or private use, without just compensation."

Under these provisions of the law, damages to private property, by whomsoever caused and for whatsoever purpose, must be paid; and the defendant, though armed and protected by the power of eminent domain, must respond to plaintiff, if in the construction of its road it has taken or damaged her property.

However, neither the constitutional inhibition against the construction of a street railroad in a city, without the consent of the local authorities, nor the consent of the municipality to the construction of defendant's road, enlarged or lessened the rights of plaintiff. Her rights depend solely upon whether her property has been taken or damaged. The constitutional inhibition recognizes the right of cities to control their streets, while the statutory provision makes it certain, as between municipalities and those constructing street railroads therein, that the latter shall make compensation for private property taken or damaged in the construction of such public works. In other words, as to the liability for compensation for private property taken or damaged, those constructing the road stand in the place of the city. So in the case at bar. If the city of Denver had constructed and operated the road in question, in the same place and manner as has the defendant, and no cause of action

arose thereby against the municipality and in favor of plaintiff, none has arisen in her favor by reason of the construction and operation of the road by defendant.

A physical taking of plaintiff's property was not essential to a cause of action in her favor, but physical damage thereto, as contradistinguished from personal annoyance or inconvenience, was. It must appear that plaintiff had some right in, user of, or interest pertaining to the property which has been wholly or partially destroyed before she can maintain a cause of action for damages to her property. The right disturbed may be either public or private, but it must be a right which she enjoyed in connection with her property, and which gave to it an additional value, and without which, or as affected by the disturbance, the property itself is damaged. The disturbance of the right or easement may be at a distance from the property injured, but the interference must be with some right held with regard to that property.

As said in *Gilbert v. Greeley S. L. & P. Ry. Co.*, 13 Colo. 501, 506: "Private property must be taken, or private property must be damaged, before a cause of action arises. The damage must be to the property, or its appurtenances, or it must affect some right or interest which the owner enjoys in connection with the property, and which is not shared with or enjoyed by the public generally."

The injury sustained must be damages to her property, not incidental injuries arising from a careful exercise of legal rights by defendant in a manner that do not invade the legal rights of plaintiff. The principle expressed in the phrase *damnum absque injuria* has not been repealed.—*City of Denver v. Bayer*, 7 Colo. 113; *Denver Cir. R. Co. v. Nestor*, 10 Colo. 403.

For annoyance and inconvenience to owners of private property, arising from the lawful and reasonable acts of another, or the lawful and reasonable use by another, without negligence and without malice, of that which is his, no matter how seriously such acts may depreciate the market price of ad-

joining property, the owner thereof is without remedy. The fundamental law gives a remedy for private property taken or damaged by requiring payment therefor, but does not extend that remedy to include compensation for personal annoyance and inconvenience suffered by reason of the proper and reasonable operation of either public works or private enterprises.

Moreover, it is certain from our decisions that a municipality in this state may use or authorize its streets to be used for all ordinary and necessary uses to which city streets are usually subjected, and to such further local uses and means of conveyance as the law-making power may have authorized for the streets and thoroughfares of the entire city, and that incidental injuries arising from a careful exercise of those rights are *damnum absque injuria,* but as to extraordinary or unusual uses or unreasonable changes in the street, no such immunity exists.—*City of Denver v. Bayer, supra; City of Denver v. Vernia,* 8 Colo. 399; *Denver Cir. R. Co. v. Nestor, supra; D. & S. F. R. Co. v. Domke,* 11 Colo. 247; *Gilbert v. G. S. & P. L. R. Co., supra; Pueblo v. Strait,* 20 Colo. 13: *City of Denver v. Bonesteel,* 30 Colo. 107; *Leiper v. Denver,* 36 Colo. 110.

As said by Mr. Justice Helm, in his concurring opinion, in *Denver Cir. R. Co. v. Nestor, supra;* "The framers of the constitution, and the people who voted for its adoption, understood that, with this instrument in force, certain injuries suffered by the proprietor of land, through the legitimate and careful improvement of adjoining ground would continue to be wrongs for which the law provides no remedy. So, also, did the convention and the people understand that the abutting lot owner would anticipate, in making his purchase, that the street would necessarily be occupied by the local public for all the usual and ordinary uses of a highway; that the city would, from time to time, under the statutory powers conferred, so change and improve the street as to render it more convenient and useful for such purposes; and that incidental injuries in-

directly resulting to him from such improvements.would still be, as they were before the constitution, wrongs without a legal remedy."

And in speaking of the power of the city over its streets, in *City of Denver v. Bayer, supra,* we said: "In determining what changes and improvements are most conducive to (the greater convenience of the public), the council exercises a large discretion. And unless unreasonable changes are made, or injury results to the adjoining premises through the unskillfulness or negligence of those employed, the owner thereof will not be heard to complain, though, in fact, the real value and convenience of his property are diminished thereby; for in purchasing his lot, or in relinquishing the public easement, he is conclusively presumed to have contemplated this power and authority of the municipal government, and is held to have anticipated any injury to his abutting land resulting from a reasonable and proper exercise thereof."

And in *Leiper v. Denver, supra,* many cases are reviewed, and it is held that an "abutting lot owner was bound to anticipate, in making his purchase, that the street would necessarily be occupied by the local public for all the usual and ordinary purposes of a highway, and that the city would, from time to time, so change and improve the street as to render it more convenient for such purposes, and that indirect injuries resulting to him therefrom remain now, as they existed before the constitutional provision was adopted, wrongs without a legal remedy."

When lands are taken or dedicated for a town or city street, the nature and extent of the public right therein are well defined. Such lands are acquired for the purpose of providing a means of free passage common to all the people. When a street is laid out it may be rightfully used throughout its entire extent in such manner as will render it most useful for a highway. And unless unreasonable changes are made therein, or it is subjected to an extraordinary or unusual use,

or injury results to the adjoining premises through faulty or improper construction, the owner of such premises has no cause of action, though, in fact, the real value and convenience of his property are diminished thereby.—*City of Denver v. Bayer, supra; Pueblo v. Strait, supra; Leiper v. Denver, supra.*

Such changes and uses, if properly made and controlled, do not in any substantial respect destroy the street as a means of free passage common to all the people, nor ordinarily impose thereon an additional servitude. By the reasonable, ordinary, usual and lawful use of a right already fully vested in the public, abutting property is not thereby damaged in a manner that can be made the basis of additional compensation under the constitutional provision.

It is equally well settled that the use of the streets in municipalities for a street railway is one of the ordinary and usual purposes for which such streets and highways may be used, and does not, when properly constructed with due regard to existing, local conditions, augment the burden or servitude upon the street so as to entitle the owner of abutting property to additional compensation.—Cooley on Const. Lim., p. 683; Dillon on Munic. Cor., (4th Ed.), sec. 723; Elliott on Roads and Streets, secs. 698, 699; Booth on Street Railways, secs. 82, 83; Joyce on Electric Laws, secs. 336, 339, 341; *San Antonio, etc., Ry. Co. v. Limburger,* 88 Tex. 79; *Rafferty v. Cen. Trac. Co.,* 147 Pa. 579; *Wagner v. Bristol B. L. Ry. Co.,* 108 Va. 594; *Placke v. Un. Depot R. Co.,* 140 Mo. 634.

On this point, in *Ransom v. Citizens' Railway Co.,* 104 Mo. 375, it is said: "Such a street railway as this, so laid and operated as not to materially impair access to, or the enjoyment of, the adjacent property may lawfully be placed in the public highways of the city, if expressly sanctioned by proper authority. Such a use does not impose any additional burden entitling the owner of adjoining land to compensation; nor can it be justly regarded, at the present day, as any substantial impairment of the public easement or of the private rights of proprietors of land abutting on the street."

And in *Placke v. Union Depot R. Co., supra,* it is said: "We think it must now be regarded as settled law that an electric street railway laid to grade is not an additional servitude, and does not infringe upon the property rights of those whose lots abut on the street."

Testing the complaint before us by the rules announced, it is clear that no cause of action is stated therein. It contains no allegation that the railway track is above or below the surface of the street, or was in any wise improperly or negligently constructed, or that the road, as a structure, in any way hampers ingress or egress. The gravamen of the complaint is the additional number of cars operated on the line, with the consequent increase in vibration and noise by reason thereof. While it is alleged that at one point in front of plaintiff's residence the west rail of defendant's road is but three feet from the curb, it is not claimed that thereby ingress and egress to plaintiff's property is affected. The inconvenience alleged in that respect arises from "the frequency with which cars are operated upon said tracks," and in no sense from the structure itself. The defendant is not liable for inconvenience of either character, because they are merely incident to the use of the highway for public travel.—*Denver & S. F. Ry. Co. et al. v. Hannegan,* 43 Colo. 122.

The mere fact that street car tracks are laid so close to an abutting owner's property as not to permit vehicles to stand between the tracks and the sidewalk, does not constitute a cause of action in favor of the abutting property owner under the damage clause of the constitution. *Wagner v. Bristol Belt Line Ry Co., supra.* The right to the use of the street is the same after the tracks are laid and the cars running thereon, as it was before. Both he and the defendant cnmpany, and likewise the public generally, are entitled to its reasonable use with due regard to the rights of each and all.—*Denver City Tram. Co. v. Wright,* 47 Colo. 366; *Carson v. Central R. Co.,* 35 Calif. 325, 327.

As said in *San Antonio Rap. Tran. Ry. Co. v. Limburger,* *supra,* p. 86; "In regard to the matter of access to the property, the question is not whether the construction and maintenance of the railway interferes with the ingress and egress to and from the storehouses, but it is whether such construction and maintenance infringe upon the right of access. It is possible that the operation of a line of omnibuses or drays, or the frequent passage of all kinds of vehicles for the conveyance of persons or property, may seriously interfere with and obstruct the occupants of the buildings in the receipt and delivery of goods; and yet it could not be held that such interference was unlawful. Everyone has the right to the use of the street for the purpose for which it was dedicated, and still in any crowded thoroughfare the driver of any one vehicle almost necessarily interferes with the passage of some other. One can not, however, unreasonably delay to the obstruction of another. So with the case of a street railway. Its passage may be lawfully interfered with by persons lawfully using the thoroughfare for pleasure or for business. It may obstruct the passage of other vehicles; but it can not legally do so, except upon reasonable necessity. The right of the company to move its cars over its track is not superior to the right of another person in the use of the street."

And in *Rafferty v. Central Traction Co., supra,* it is said that if at any time the abutting owner has occasion for the presence of vehicles on the street in front of his property to take away or deliver persons or goods, he may exercise that right for such reasonable time as is necessary for his purpose; and if, in such exercise of the right the passage of street cars is impeded, they must wait.

Moreover, the well recognized rule is, that in order for a plaintiff to state a cause of action under the damage clause of the constitution, he must allege facts showing that the injury to him is not only greater in degree but different in kind from that suffered by the public at large. The complaint contains

no such allegations. The annoyance, discomfort and injury suffered by the plaintiff from the loud and disagreeable noises and vibrations produced by the cars passing over the tracks and around the curves, and the ringing of alarm bells at the place and times in question, are the same, except in degree, as are suffered by the public generally as far as such sounds and vibrations are heard and felt. And as to injury to the ingress and egress to and from the premises, it is not different in kind from that suffered by every other owner of property along the street. The use of the street by any one, in the most careful matter, whether by operating street cars theron, driving teams or automobiles or other vehicles over the same, or traveling upon foot, does to some extent obstruct ingress and egress to and from the property abutting upon the street. But these are temporary and passing inconveniences and affect the general public in the same manner as they affect the abutting property owner, differing only in degree.—*Romer v. St. Paul, etc., Co.,* 75 Minn. 211.

Whether street car tracks are at the side or in the center of the street, if they damage, in the constitutional sense, an abutting property owner's ingress and egress to and from the street, he has a cause of action. But, as said in the *syllabus* of *Wagner v. Bristol Belt Line Ry. Co., supra:* "An abutting owner is not entitled to damages merely because his property is made less desirable and less comfortable as a residence by reason of the fact that a street car track is laid on the side of the street next to his residence instead of in the center of the street. When the acts complained of amount simply to an inconvenience or discomfort of the occupants of the property, but the property itself does not suffer any diminution in substance, and is not rendered intrinsically less valuable by reason of the public use there can be no recovery. The property is not damaged within the meaning of the constitution."

The conclusions we have reached herein are in accord with the principles this court has heretofore announced, and

likewise consistent with the best-reasoned cases in other juris-
dictions.    So it is unnecessary to continue the discussion fur-
ther.    The judgment is affirmed.

*Judgment affirmed.*

Decision *en banc.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE SCOTT dissent-
ing.

CHIEF JUSTICE MUSSER dissenting:

Each case is governed by its own peculiar facts.    As I
read the complaint, it appears to me that it alleges facts,
which, if not denied or if not explained, are sufficient to show
that the property in question has suffered such special damage
as to call for compensation within the true intent and mean-
ing of the provision of our constitution, which says, "That
private property shall not be taken or damaged for public or
private use without just compensation" (Const., art. II, sec.
15), as that provision has been heretofore construed by this
court.    The demurrer should have been overruled.

Mr. Justice Scott joins with me in this dissent.