**HERO LANDS COMPANY, Hero Wall Company, New City Company, and Hero Company**

v.

**The UNITED STATES.**

No. 538–79L.

United States Claims Court.

Jan. 20, 1983.

Robert L. Redfearn, New Orleans, La., for plaintiffs. Daniel J. Caruso, John C. Herbert, and Simon, Peragine, Smith & Redfearn, New Orleans, La., of counsel.

James E. Brookshire, Washington, D.C., with whom was Asst. Atty. Gen., Carol E. Dinkins, Washington, D.C., for defendant. Edward J. Passarelli and Robert N. Kittel, Office of Gen. Counsel, Dept. of the Navy, Washington, D.C., of counsel.

## OPINION

WHITE, Judge.

The plaintiffs sue in this case because the Government allegedly has taken, without just compensation, so-called avigation easements in the airspace above a number of tracts of land which the plaintiffs severally own in Plaquemines Parish, Louisiana. The action is based on flights by military jet aircraft of the defendant through the airspace above the tracts in question.

As explained later in the opinion, it is concluded that the plaintiffs are not entitled to recover.

The plaintiffs' lands—designated in the record as tracts numbered 1 through 16 (and sometimes referred to collectively hereafter in the opinion as "the Hero lands" or as "the plaintiffs' lands")—are located either adjacent to or quite near the Naval Air Station New Orleans (NAS NO). NAS NO is located in Plaquemines Parish, approximately 6 miles south of the City of New Orleans, and is operated by the Department of the Navy. NAS NO was commissioned as a naval installation of the United States in 1957, and aircraft operations began there in 1958.

At all times material to this case, the Naval Air Reserve, the Marine Corps Air Reserve, the Air Force Reserve, and the Louisiana Air National Guard have regularly conducted aircraft operations at NAS NO, and defendant's aircraft, including military jet aircraft, operating from NAS NO have regularly and frequently overflown the Hero lands.

Although all 16 of the plaintiffs' tracts are located either adjacent to or near NAS NO, it is necessary to divide the plaintiffs' lands into different categories for a clear understanding of the issues that are involved in the litigation.

### Lands Suitable for Industrial Development

The evidence shows that the highest and best use for tracts 8, 14, 15, and 16, and for parts of tracts 7, 9, 10, and 12, has been and is now for industrial development, together with supportive activities. The evidence also shows that the usefulness for industrial development of the portions of the plaintiffs' lands mentioned in the preceding sentence has not been adversely affected to a substantial degree, and the value of these portions for such purpose has not been substantially diminished, as a result of the defendant's aircraft operations at NAS NO.

This court's predecessor, the U.S. Court of Claims, whose decisions are binding on this court, established the rule that, so long as flights by government-owned aircraft through the airspace above land do not interfere substantially with the use and enjoyment of the property, the Government is not liable to the landowner for the taking of an avigation easement, even though the flights are at impermissibly low altitudes

(*e.g., Adaman Mutual Water Co. v. United States,* 143 Ct.Cl. 921, 923, 181 F.Supp. 658, 659 (1958); *Mid-States Fats and Oils Corp. v. United States,* 159 Ct.Cl. 301, 304 (1962); *Aaron v. United States,* 160 Ct.Cl. 295, 298, 311 F.2d 798, 800 (1963); *A.J. Hodges Industries, Inc. v. United States,* 174 Ct.Cl. 259, 264, 355 F.2d 592, 595 (1966); *see Jensen v. United States,* 158 Ct.Cl. 333, 340, 305 F.2d 444, 448 (1962)).

█ As the regular and frequent flights by defendant's aircraft through the airspace above the portions of the Hero lands discussed in this part of the opinion have not resulted in any substantial interference with the use and enjoyment of such lands for the purpose for which they are best suited, or in any substantial diminution in their value, it necessarily follows that the defendant is not liable to the plaintiffs for the taking of avigation easements over the tracts and parts of tracts previously enumerated.

It should also be mentioned that the evidence in the record does not show the heights at which the defendant's aircraft have regularly and frequently passed over tracts 10, 14, 15, and 16. With respect to tracts 7, 8, 9, and 12, the minimum heights of overflights, as shown by the evidence, were 600 feet for tract 7, 700 feet for tracts 9 and 12, and 1,000 feet for tract 8. The factor of overflight heights will be discussed later in connection with other tracts owned by the plaintiffs.

With respect to tracts 8, 10, and 12, it is also appropriate to mention that, more than 20 years before the plaintiffs' complaint in the present action was filed, the defendant acquired avigation easements for the free and unobstructed passage of aircraft through the airspace over certain of the Hero lands, including most of tracts 8 and 10, and over a portion of tract 12. The plaintiffs have not established in the present action that defendant's military jet aircraft have regularly and frequently invaded portions of the airspace over tracts 8,

10, and 12 not involved in the early easements. This factor will also be discussed later in connection with another tract.

### Height of Overflights

Consideration will be given next to tracts 1, 2, 3, 4, 5, and 13, and the parts of tracts 7, 9, 10, and 12 that are not suitable for industrial development.

The evidence in the record does not disclose the minimum heights at which the defendant's military jet aircraft have regularly and frequently flown above 1, 2, 3, 4, 5, 10, and 13.[1] Inasmuch as the record does show the minimum heights—varying from 200 feet to 1,000 feet above ground level—at which the defendant's military jet aircraft regularly and frequently flew over certain other Hero lands, it is inferred, and found, that overflights above the areas mentioned in the preceding sentence were at heights greater than 1,000 feet above ground level.

With respect to tracts 7, 9, and 12, the evidence in the record shows that the minimum heights of flights above these areas were 600 feet for tract 7, and 700 feet for tracts 9 and 12.[2]

In dealing with cases involving claims by landowners against the Government for the alleged taking of avigation easements without just compensation, it has been necessary for the courts to weigh the conflicting interests of landowners in the use and enjoyment of their lands without annoyance from overflights by aircraft and without danger attributable to overflights, and, on the other hand, the interests of the Government and of the general public in the free use of the airspace in this air-minded age for national defense and transportation purposes. In the benchmark case of *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), the Court said (at 264–65, 66 S.Ct. at 1067–68) that a landowner is protected against intrusion in the airspace above the land so immediate and

---

1. The same is true of tracts 14, 15, and 16, discussed in the preceding part of the opinion.

2. The minimum height of flights over tract 8, discussed in the preceding part of the opinion, was 1,000 feet above ground level.

direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it. On the other hand, the Court referred (at 261, 66 S.Ct. at 1065–66) to the air as a public highway and (at 266, 66 S.Ct. at 1068) to the airspace overhead as being part of the public domain.

With the *Causby* decision as a guideline, the Court of Claims used the 500-foot height above ground level as the dividing line between the portion of the lower airspace in which landowners in uncongested areas are protected against intrusion by aircraft, and the upper portion of the airspace in which aircraft enjoy the right of free passage without liability to the owners of lands below. For example, in the case of *Aaron v. United States,* 160 Ct.Cl. 295, 311 F.2d 798 (1963), the Court of Claims said (160 Ct.Cl. at 307) that in uncongested areas the airspace over land up to an altitude of 500 feet above the ground is not subject to the public right of freedom of air navigation, and also said (160 Ct.Cl. at 319) that the airspace beginning at an elevation of 500 feet above the ground is part of the public domain and is subject to the public right of freedom of navigation.

The Court of Claims explained in *Aaron* (160 Ct.Cl. at 300, 311 F.2d at 801) that the choice of 500 feet above ground level as the dividing line between protected and unprotected airspace over uncongested areas was based on the Air Commerce Act of 1926 (44 Stat. 568), as amended by the Civil Aeronautics Act of 1938 (52 Stat. 573); that this legislation granted to any citizen a public right of freedom of transit through the navigable airspace of the United States,[3] and it defined "navigable airspace" as airspace above the minimum safe altitude of flight prescribed by the Civil Aeronautics Authority;[4] and that the Civil Aeronautics Authority (now the Civil Aeronautics Board) had fixed 500 feet above ground level as the minimum safe altitude for flights over uncongested areas, and 1,000 feet for flights over congested areas.

All of the Hero lands involved in this action, with the exception of a portion of tract 7 that is being used for industrial purposes, are uninhabited, open lands.

Except for one case, all decisions by the Court of Claims granting judgments to landowners in uncongested areas for the taking of avigation easements by the Government involved cases in which flights by government-owned aircraft over privately owned lands at altitudes of 500 feet or less above ground level had been of such regularity and frequency, and had created such conditions, as to constitute a direct, immediate, and substantial interference with the use and enjoyment of the property.

The exception mentioned in the preceding paragraph was the decision of the Court of Claims in the case of *Branning v. United States,* 228 Ct.Cl. ——, 654 F.2d 88 (1981). The *Branning* case involved a training program for pilots stationed at the Marine Corps Air Station in Beaufort, South Carolina. Part of the program consisted of an operation referred to as "field mirror landing practice" (MFLP), in which the prescribed flight pattern required trainees to take off from a runway on the station and then fly the aircraft directly over the plaintiff's property in a "race tract pattern" at an altitude of 600 feet above ground level, and return to the runway. The pattern was repeated by each aircraft several times over a period of several days during each month in which the training was conducted. In holding that the Government had taken an avigation easement over the plaintiff's property—although the flights were at altitudes somewhat higher than 500 feet above ground level—the court stated in part as follows (228 Ct.Cl. at ——, 654 F.2d at 90):

> * * * *A vital factor of this case* is that defendant devised an exercise to prepare trainees for future landings on aircraft

---

**3.** This provision is now codified in 49 U.S.C. § 1304 (1976).

**4.** This provision is now codified in 49 U.S.C. § 1301(29) (Supp. IV 1980) and it refers to

regulations issued by the Civil Aeronautics Board, successor to the Civil Aeronautics Authority.

carriers, in which heavy jet aircraft followed one another almost nose to tail in an unvarying loop over plaintiff's land. Trainees were required to hold their planes, preparatory for landing on the suppositious carrier deck, with noses up and tails down, with near maximum power (and noise) associated with low speed. * * * Whether use of airspace above 500 feet for noisy air navigation of a more conventional variety can be held a taking is an issue that can be and is reserved for the case that presents it. *In this case our taking holding turns on the peculiar facts the trial judge has found.* [Emphasis supplied.]

The present record is completely devoid of any evidence concerning flights by defendant's military jet aircraft above tracts 1, 2, 3, 4, 5, 7, 9, 10, 12, or 13 that is comparable to the evidence in the *Branning* case.

■ Because the evidence in the record does not disclose the sort of "peculiar facts" on which the *Branning* decision was based, and because the overflights above tracts 1, 2, 3, 4, 5, 7, 9, 10, 12, and 13 occurred at minimum heights greater than 500 feet above ground level—*i.e.,* in the portion of the airspace where the Government and the general public ordinarily have the right of free passage—the plaintiffs cannot recover with respect to these tracts.

The record does show that "field carrier landing practice" (FCLP) training exercises were conducted at NAS NO. However, such exercises did not involve intrusions into the airspace above any of the tracts enumerated in the preceding paragraph, with the exception of tract 7.

The FCLP flights above tract 7 were at the minimum height of 600 feet above ground level. Such operations, however, occurred only twice a year, on the average; and, when they occurred, they continued only during a period of from 7 to 10 days. Furthermore, the evidence in the record does not show how the noise from the FCLP operations above tract 7 actually af-

fected persons or activities on the ground, and does not disclose the sort of "peculiar facts" concerning the FCLP operations above tract 7 that led the Court of Claims to hold for the landowner in the *Branning* case.[5]

■ Even if it were established that FCLP operations above tract 7 resulted in the taking of an avigation easement over the portion of tract 7 not suitable for industrial development, it appears that a claim for the taking would be barred by the pertinent statute of limitations. An action on a claim within the jurisdiction of this court must be instituted within 6 years after the claim first accrues (28 U.S.C. § 2501).

FCLP operations at NAS NO began as early as the 1970–71 time period, or before the beginning of the 6-year period that immediately preceded the filing of the plaintiffs' complaint. The military jet aircraft used in the FCLP operations during the early 1970's were the A–4 and the F–8 with afterburner. Later, during the 6-year limitations period, newer types of military jet aircraft, the A–7 and the A–37, were used in the FCLP operations at NAS NO. However, the evidence does not establish that the A–7 and the A–37, as they passed above tract 7, were substantially more disturbing because of noise, etc., than the A–4 and F–8 had been (*cf. Davis v. United States,* 155 Ct.Cl. 418, 420–22, 295 F.2d 931, 932–34 (1961); *Avery v. United States,* 165 Ct.Cl. 357, 362, 330 F.2d 640, 643 (1964)), or that the A–7 and A–37 flew at substantially lower altitudes over tract 7 than the A–4 and F–8 had flown (*cf. A.J. Hodges Industries, Inc. v. United States,* 174 Ct.Cl. 259, 266–67, 355 F.2d 592, 597 (1966)). For these reasons, it appears that any avigation easement resulting from FCLP operations over the portion of tract 7 not suitable for industrial development would have been taken before the beginning of the 6-year limitations period.

In addition, it should be pointed out that, as to all the tracts discussed in this part of the opinion, the plaintiffs failed to prove

**5.** Actually, such "peculiar facts" are lacking as to all the tracts involved in this case.

that such adverse consequences as resulted from the defendant's aircraft operations at NAS NO occurred within the 6-year period immediately preceding the filing of the plaintiffs' complaint.

The evidence on damages indicates, first, that at some time in the past—the evidence does not disclose just when—the highest and best use for these areas was for agricultural purposes coupled with holding the lands on the basis of a reasonable expectation that, at some indefinite time in the future, population increases in the New Orleans metropolitan area would create a demand for the lands to be used for subdivision development of a residential or mixed residential and commercial nature. The evidence further shows that, because of the defendant's aircraft operations at NAS NO, at least parts of tracts 1, 2, 3, 4, 7, and 12 cannot be regarded as having any future potential for subdivision development [6] (although there is nothing to indicate that the usefulness of any of these areas solely for agricultural purposes has been adversely affected to a substantial degree by the defendant's aircraft operations at NAS NO). Consequently, the defendant's aircraft operations at NAS NO have deprived parts of tracts 1, 2, 3, 4, 7, and 12 of a speculative element of value which they once had. Whether this speculative element added substantially to the fair market value of the lands is not revealed by the record.

Moreover, the evidence does not establish that this change occurred during the 6-year period immediately preceding the filing of the plaintiffs' complaint. The plaintiffs did not prove that the military jet aircraft (e.g., the F–100, F–106, A–4, A–7, A–37, and F–4) used in operations at NAS NO during the 6-year limitations period adversely affected the potential of any Hero lands for ultimate subdivision development to a substantially greater degree than did the military jet aircraft (e.g., the F–100, F–102, F–8, A–4, T–33, T–38, and T–39) used in operations at NAS NO before the beginning of the 6-year limitations period. Therefore,

it is reasonable to infer, and it is found, that any loss of potential for ultimate subdivision development, because of aircraft operations at NAS NO, occurred more than 6 years before the plaintiffs' complaint was filed. Consequently, any claim based upon such loss would be barred by the 6-year statute of limitations.

*Tracts 6 and 11*

Tracts 6 and 11 are in a somewhat different category from the other tracts involved in the present case, because the evidence in the record shows that military jet aircraft of the defendant have regularly and frequently overflown tract 6 at a minimum altitude of 340 feet above ground level and have overflown tract 11 at minimum altitudes ranging between 200 and 300 feet above ground level.

With respect to tract 11, the evidence in the record shows that, more than 20 years before the plaintiffs' complaint in the present action was filed, the defendant acquired an avigation easement for the free and unobstructed passage of aircraft through the airspace over all of tract 11. Military jet aircraft of the defendant have been operating at NAS NO ever since aircraft operations started there in 1958, so it is obvious that the avigation easement over tract 11 was obtained for use by military jet aircraft.

In this connection, although FCLP operations at NAS NO involved tract 11, the evidence fails to show that the aircraft (the A–7) which performed such operations above tract 11 within the 6-year limitations period was substantially noisier, or flew at a substantially lower altitude, than the aircraft (the A–4 and the F–8) which performed such operations in the early 1970's, before the beginning of the 6-year period of limitations. Actually, there is nothing in the record to establish that any of the aircraft operations at NAS NO during the 6-year limitations period, involving such military jet aircraft as the F–100, F–106, A–4, A–7, A–37, and F–4, adversely affect-

**6.** This determination is based on the results of an Air Installations Compatible Use Zone (AI-

CUZ) study which was made by the Government with respect to NAS NO.

ed either tract 11 or tract 6 to a substantially greater extent than the operations before the beginning of the 6-year period, which involved such military jet aircraft as the F–100, F–102, F–8, A–4, T–33, T–38, and T–39.

As to both tracts 6 and 11, the evidence on damages is to the effect that the defendant's aircraft operations at NAS NO deprived at least parts of these tracts of a speculative element of value which they once had for subdivision development, based on a reasonable expectation that, at some indefinite time in the future, population increases in the New Orleans metropolitan area would create a demand for these tracts to be used for subdivision development. However, as has been said in connection with other Hero lands, the proof does not establish that this change occurred during the 6-year limitations period.

Therefore, any claim for the taking of another avigation easement over tract 11, or for the taking of an avigation easement over tract 6, must fail because it is reasonable to infer, and to find, that any such taking occurred more than 6 years before the filing of the plaintiffs' complaint.

### CONCLUSION OF LAW

Upon the opinion and the facts as found by the court, the court concludes as a matter of law that the plaintiffs are not entitled to recover. The complaint will therefore be dismissed.