Ralph THOMPSON, Carol J. Thompson, Mollie Wolfe, Edward A. Wolfe, Donald E. Wolfe, Lorene M. Leary, Elsie D. Hahn, collectively Wolfe Farms, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF DENVER, a municipal corporation of the State of Colorado, Defendant–Appellee.

No. 97CA0234.

Colorado Court of Appeals, Div. III.

May 14, 1998.

Duncan, Ostrander & Dingess, P.C., Donald M. Ostrander, Ronald E. Von Lembke,

Steven R. Sampson, Robert R. Duncan, Denver, for Plaintiffs–Appellants.

Daniel E. Muse, City Attorney, Nicholas Pijoan, Assistant City Attorney, Airport Legal Services—DIA, Denver; Holme, Roberts & Owen, LLP, Patrica C. Tisdale, Eric E. Johnson, Denver, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this inverse condemnation action concerning aircraft overflights, plaintiffs, Ralph Thompson, Carol J. Thompson, Mollie Wolfe, Edward A. Wolfe, Donald E. Wolfe, Lorene M. Leary, and Elsie D. Hahn, appeal the judgment entered in favor of defendant, the City and County of Denver. We affirm.

Plaintiffs own a parcel of land located approximately three miles north of a runway at Denver International Airport (DIA). The property is used for agricultural purposes and has one single-family residence. Mollie Wolfe occupied the residence until 1990, when plaintiffs began using it as a rental unit.

Both arriving and departing flights from DIA fly directly over sections of plaintiffs' parcel. Following the opening of DIA, the current tenant complained that, during peak noise occurrences, sounds from overflying aircraft occasionally disrupted sleep, face-to-face and telephone conversations, radio and television audio, and created vibrations sufficient to move wall hangings off-center.

Plaintiffs filed this action seeking compensation for inverse condemnation of the parcel, claiming that the overflights constituted a taking of their property, and that the noise from the aircraft damaged their property interests in violation of the United States and Colorado constitutions.

The trial court held a hearing to determine whether the overflights constituted a taking under either constitution, or whether they had damaged plaintiffs' property under Colo. Const. art. II, § 15. The court determined that neither a taking nor damaging had occurred. Plaintiffs appeal that determination.

## I.

Plaintiffs contend that the trial court erred by applying an incorrect legal standard to determine whether there was a taking of their property by defendant. More specifically, they assert that the court failed to discuss and resolve whether the daily flight of aircraft directly over their property was a "physical" invasion of their property interests. Further, they argue, the failure to determine whether these activities created a physical taking of their property led the court incorrectly to apply the "damaging" standard of the Colorado constitution. We find no reversible error.

Both the Fifth Amendment and Colo. Const. art. II, § 15, prohibit the taking of private property for public use without just compensation.

■ In order to pursue an inverse condemnation claim under the Colorado constitution, that is, to compel the State to exercise its power of eminent domain, a plaintiff must establish: (1) that there has been a taking or damaging of a property interest; (2) for a public purpose without just compensation; (3) by a governmental or public entity that has the power of eminent domain but which has refused to exercise it. *Jorgenson v. City of Aurora,* 767 P.2d 756 (Colo.App.1988); *see also Kratzenstein v. Board of County Commissioners,* 674 P.2d 1009 (Colo.App.1983).

■ As a general rule, a taking of property occurs when the entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property. A taking can be effected by a legal interference with the physical use, possession, disposition, or enjoyment of the property, or by acts which translate to an exercise of dominion and control by a governmental entity. A taking also occurs if an owner is required to forego the economically beneficial use of his or her property. *City of Northglenn v. Grynberg,* 846 P.2d 175 (Colo.1993); *Clare v. Florissant Water & Sanitation District,* 879 P.2d 471 (Colo.App.1994).

■ A threshold issue in any inverse condemnation proceeding is whether a plaintiff has a constitutionally protected property interest. *See Persyn v. United States,* 34 Fed. Cl. 187 (Fed.Cl.1995), *aff'd,* 106 F.3d 424 (Fed.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1697, 137 L.Ed.2d 824 (1997); *City of Northglenn v. Grynberg, supra.*

Sovereignty in the space above the lands and waters of Colorado is declared to rest in the state, except where assumed by United States law. Section 41–1–106, C.R.S.1997.

The ownership of space above the lands and waters of Colorado is vested in the owners of the surface beneath, subject to the right of flight of aircraft. Section 41–1–107, C.R.S.1997.

■ A landowner's property interest in the land extends to the airspace directly over the property to the extent that the airspace can be used to benefit the underlying land. However, since Congress has placed navigable airspace in the public domain, subject to exceptions not pertinent here, the surface owner's property interest in airspace above the land is generally limited to that airspace which is below navigable limits. *See United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946).

"Navigable airspace" refers to the airspace above the minimum altitudes of flight prescribed by regulations issued under the Federal Aviation Act, including the airspace needed during the takeoff and landing of aircraft. *See* 49 U.S.C. § 40102(a)(30) (1994).

Over uncongested areas, as here, navigable airspace begins at 500 feet above the surface, except over open water or sparsely populated areas. In those cases, navigable airspace begins at 500 feet above any person, vessel, vehicle, or structure. *See* 49 U.S.C. §§ 40103(a)(1)-(2), 40102(a)(30)(1994); 14 C.F.R. § 91.119(b) & (c) (1997).

Accordingly, there is generally a right of free passage for aircraft at heights greater than 500 feet above ground level (AGL) in uncongested areas, and landowners cannot ordinarily recover for an alleged taking of an avigation easement for overflights in this portion of airspace. *Hero Lands Co. v. United States,* 554 F.Supp. 1262 (Ct.Cl.1983), *aff'd,* 727 F.2d 1118 (Fed.Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2346, 80

L.Ed.2d 819 (1984); *see Lacey v. United States,* 219 Ct.Cl. 551, 595 F.2d 614 (1979); *Aaron v. United States,* 160 Ct.Cl. 295, 311 F.2d 798 (1963).

■ Hence, for Fifth Amendment purposes, only frequent and low flights by aircraft, directly over private land, below 500 feet AGL, that cause substantial, direct, and immediate interference with the property owner's enjoyment and use of the land, are takings. *See Brown v. United States,* 73 F.3d 1100 (Fed.Cir.1996).

■ Here, the trial court found that arriving flights generally fly over the western edge of plaintiffs' property at an altitude of 1,000 to 1,500 feet AGL. Departing flights generally reached an altitude of 1,000 to 2,000 feet AGL when flying over, or near, the property. The court found that the flights were within navigable airspace. Accordingly, it concluded that the air traffic must be considered an "adjacent use."

At trial, plaintiffs neither contended nor presented any evidence that their property lies in anything other than an uncongested area for purposes of the statutes and regulations that define the scope of federal navigable airspace. Indeed, plaintiffs admitted that they had not alleged that any overflight had occurred at less than 500 feet AGL.

We view the court's findings and conclusions as being sufficient to address and reject plaintiffs' contention that a physical invasion had occurred. Although as many as several hundred overflights per day might occur, because they remained within navigable airspace, it necessarily follows that such overflights did not physically invade plaintiffs' property.

Hence, because plaintiffs had no protected property interest in the navigable airspace in which the aircraft here flew, the trial court correctly found that plaintiffs had sustained no compensable physical taking within the meaning of the federal and state constitutions.

## II.

Plaintiffs assert that the trial court erred by determining that there had been no compensable "damaging" of their property, because of flight noise, within the purview of Colo. Const. art. II, § 15. Again, we disagree.

Colo. Const. art. II, § 15 provides that "private property shall not be taken *or damaged* for public or private use, without just compensation." (emphasis added)

The intent of including the word "damaged" in the constitution was to grant relief to property owners who have been substantially damaged by the creation of public improvements abutting their lands, but whose land has not been physically taken by the government. *City of Northglenn v. Grynberg, supra.*

■ To recover in a "damaging" case, the owner must show a unique or special injury that is different in kind from, or not common to, the general public. The damage must be to the property or its appurtenances, or it must affect some right or interest that the owner enjoys in connection with the property and which is not shared with or enjoyed by the public generally. *City of Northglenn v. Grynberg, supra.*

■ The damage must be different in nature from, and not merely greater in degree than, that suffered by the general public. In no case has mere depreciation in value been grounds to award compensation for a damaging of property. *City of Northglenn v. Grynberg, supra; see Troiano v. Colorado Department of Highways,* 170 Colo. 484, 463 P.2d 448 (1969).

■ Annoyance and inconvenience to owners of private property does not rise to the level of a compensable damaging. *See Harrison v. Denver City Tramway Co.,* 54 Colo. 593, 131 P. 409 (1913).

■ Here, the trial court found that, although significant noise from direct overflights annoyed and disturbed plaintiffs and their tenants, the noise disturbance was not different in kind from that suffered by the public in general. Although plaintiffs suffered from the noise disturbance to a greater degree than many members of the public, the nature of the damage, *i.e.,* personal annoy-

ance and inconvenience, was the same as that suffered by the public at large.

The court specifically found that the noise had no impact on agricultural operations. The court also found that the noise levels were not so substantial as to render the residence uninhabitable or less rentable than before the commencement of operations at DIA. The court determined that the value of defendants' property had somewhat depreciated because of the noise, but that this depreciation did not constitute a compensable damaging.

Plaintiffs nevertheless contend that their damages are different in kind from those suffered by the public in general. They assert that the overflights impose a new and extraordinary burden on their ability to use and enjoy the property, thereby entitling them to compensation. We are not persuaded.

In *Harrison v. Denver City Tramway Co., supra,* the supreme court held that a homeowner did not suffer a compensable damaging to her property when the city of Denver built a tramway track close to the border of her residential property. The court stated:

> The annoyance, discomfort, and injury suffered by the plaintiff from the loud and disagreeable noises and vibrations produced by the cars passing over the tracks and around the curves, and the ringing of alarm bells at the place and times in question, are the same, except in degree, as are suffered by the public generally as far as such sounds and vibrations are heard and felt.

*Harrison v. Denver City Tramway Co., supra,* 54 Colo. at 603, 131 P. at 413. The court concluded that an abutting owner is not entitled to damages merely because his or her property becomes less desirable and less comfortable because of the adjacent use.

We find this reasoning persuasive in the instant case. The harm suffered by plaintiffs is the annoyance, discomfort, and injury arising from the noise, exhaust pollutants, and vibrations that originate from the flights of the aircraft. These effects are the same, except in degree, as suffered by the public in general. *See City of Lakewood v. DeRoos,*

631 P.2d 1140 (Colo.App.1981) (although an owner may be exposed to greater amounts of noise, pollution, or traffic by the expansion of a road on adjacent property, such effects were not different in kind from the effects suffered by the public in general).

 The trial court's finding that plaintiffs had incurred some damage in the form of depreciation in property value does not warrant a different conclusion. Such depreciation, standing alone, is not compensable. *See City of Northglenn v. Grynberg, supra.*

We conclude that the trial court's findings are supported by the record and that the court employed the correct legal analysis in reaching its conclusion that no compensable damaging had occurred.

The judgment is affirmed.

PLANK and BRIGGS, JJ., concur.