**710**

Carl L. CLAASSEN and Susan D. Claassen; Linda T. Kaysen and Edward L. Kaysen, Jr.; Thompson P. Stanfield and Carol U. Stanfield; Michael S. Katz and Holly Kim Katz; Joseph R. Ross; Mark Black and Peggy Tabor; Julie L. Roubidoux and Jodie E. Hogan; Bobby L. McGee and Sandra McGee; Kay Banta and Holly Kim Katz; and Rodney G. Lambertson and Carolyn L. Lambertson, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF DENVER, a body politic and corporate of the State of Colorado, Defendant–Appellee.

No. 99CA1165.

Colorado Court of Appeals, Div. V.

Oct. 26, 2000.

Certiorari Denied Sept. 4, 2001.*

---

* Justice KOULIS would grant as to the following issues:

Whether the court of appeals erred in ruling that excessive noise from operations at Denver International Airport could not constitute a taking of Petitioner's properties under Colorado law.

Whether the court of appeals erred in ruling that excessive noise from operations at Denver International Airport could not constitute a damaging of Petitioner's properties under Colorado Law.

Hale Hackstaff Tymkovich & ErkenBrack, L.L.P., Timothy M. Tymkovich, Allan L. Hale, Monica A. Flanigan, Denver, CO, for Plaintiffs–Appellants.

J. Wallace Wortham, City Attorney, Nicholas Pijoan, Assistant City Attorney, Denver, CO; Holme Roberts & Owen LLP, Patricia C. Tisdale, Richard F. Rodriguez, Denver, CO, for Defendant–Appellee.

Opinion by Judge NIETO.

Plaintiffs, Carl L. Claassen, Susan D. Claassen, Linda T. Kaysen, Edward L. Kaysen, Jr., Thompson P. Stanfield, Carol U. Stanfield, Michael S. Katz, Holly Kim Katz, Joseph R. Ross, Mark Black, Peggy Tabor, Julie L. Roubidoux, Jodie E. Hogan, Bobby L. McGee, Sandra McGee, Kay Banta, Rodney G. Lambertson, and Carolyn L. Lambertson, appeal the trial court's judgment dismissing their claims for compensation for the alleged taking of and damages to their real property caused by aircraft overflying their property while landing at or departing from Denver International Airport (DIA). Defendant, the City and County of Denver, is the owner and operator of DIA. We affirm in part, vacate part of the judgment, and remand with directions.

Plaintiffs sought relief based first, on alleged violations of the Fifth and Fourteenth Amendments, and second, on alleged violations of Colo. Const. art. II, § 15, and § 38–1–101, et seq., C.R.S.2000. The court granted Denver's motion to dismiss all of the claims based on violations of the Fifth and Fourteenth Amendments. The court also granted Denver's motions for summary judgment on all of the claims based on both the alleged "taking" and the alleged "damaging" in violation of Colo. Const. art. II, § 15.

## I. Taking Claims

Plaintiffs assert that the trial court erred by granting summary judgment dismissing their claims for the alleged taking of their property in violation of Colo. Const. art. II, § 15. We disagree.

The court found that all of the subject property was in an uncongested area, as that term is used in Federal Aviation Administration (FAA) regulations. *See* 14 C.F.R. § 91.119 (2000). The aircraft overflights, except in a few isolated instances, have been over five hundred feet above ground level. Based on these facts, the court found there had been no physical entry into plaintiffs' property and no physical ouster of the plaintiffs from their property. The court concluded that without physical entry on or physical ouster from the property, the plaintiffs could not recover for a taking of their property and, accordingly, granted summary judgment.

Appellate review of summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995). Summary judgment may be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56. In assessing the propriety of a summary judgment, the court must view the facts in the light most favorable to the nonmovant. *Colorado Civil Rights Commission v. North Washington Fire Protection District*, 772 P.2d 70 (Colo.1989).

A taking occurs when an entity with the power of eminent domain substantially deprives an owner of the use and enjoyment of property. *Northglenn v. Grynberg*, 846 P.2d 175 (Colo.1993). The requirements for a *de facto* taking are "a physical entry by the condemnor, a physical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property." *Northglenn v. Grynberg, supra*, 846 P.2d at 178–79.

Navigable airspace is in the public domain, and the surface owner's property interest in airspace above his or her land is generally limited to the airspace which is below navigable limits. *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). In Colorado, the General Assembly has declared that the ownership of

airspace above the land is vested in the owners of the land "subject to the right of flight of aircraft." Section 41–1–107, C.R.S.2000.

Congress has defined "navigable airspace" as airspace "above the minimum altitudes of flight prescribed by regulations...." 49 U.S.C. § 40102(a)(30)(2000). The Federal Aviation Administration regulations define the minimum safe altitude of flight as:

> Over congested areas. Over any congested area of a city, town, or settlement, or over any open air assembly of persons, an altitude of 1,000 feet above the highest obstacle within the horizontal radius of 2,000 feet of the aircraft.
>
> Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In those cases, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

14 C.F.R. § 91.119(b), (c)(2000).

■ Plaintiffs first assert that the court erred in determining that their properties are in an "uncongested area." We are not persuaded.

■ Plaintiffs acknowledge there is no case law interpreting the FAA regulations defining the meaning of a "congested area." They argue that their properties are a "settlement" and therefore should be considered a "congested area." The regulation refers to the "congested area of a city, town, or settlement." When read in the context of the regulation, "settlement" refers to a cluster of occupied buildings which are in an unincorporated area but which have the physical characteristics of a city or town.

Here, the houses are not within any city or town. The photographic exhibits attached to the pleadings in this case clearly show that, while some of the plaintiffs' properties are clustered together, the area is rural, sparsely settled, and primarily given to agricultural uses. To consider this area a "settlement" would leave the term "sparsely populated areas" meaningless. Therefore, we conclude that the trial court did not err by finding that, for purposes of FAA regulations, the plaintiffs' properties are in an uncongested area.

■ Plaintiffs next assert that the court erred by finding that a physical invasion was required to support a takings claim. Again we are not persuaded.

Colo. Const. art. II, § 15 provides "Private property shall not be taken or damaged, for public or private use, without just compensation." In *Thompson v. Denver*, 958 P.2d 525, 528 (Colo.App.1998), a panel of this court recently ruled on the "taking" issue stating:

> Although as many as several hundred overflights per day might occur, because they remained within navigable airspace, it necessarily follows that such overflights did not physically invade plaintiffs' property.
>
> Hence, because plaintiffs had no protected property interest in the navigable airspace in which the aircraft here flew, the trial court correctly found that plaintiffs had sustained no compensable physical taking within the meaning of the federal and state constitutions.

We consider this holding to be correct and adopt it here.

Accordingly, we conclude that, absent a physical invasion into the airspace above plaintiffs' property that is below the navigable airspace, there can be no physical taking within the meaning of Colo. Const. art. II, § 15. Hence, summary judgment was properly entered on this claim.

## II. Damaging Claims

■ Plaintiffs also contend the court erred by finding their claimed injuries were not different from those suffered by the general public and, thus, in granting Denver's motion for summary judgment on plaintiffs' "damaging" claims. We disagree.

Plaintiffs claim overflights damaged their property by creating noise, pollution, and vibration on the property resulting in an interference with the use and enjoyment of their property and diminishment of its value. The trial court accepted the plaintiffs' evidence of injury, but determined that those injuries were not compensable under Colo. Const. art. II, § 15.

Including the word "damaged" in this constitutional provision provides relief to property owners who have been substantially damaged by public uses abutting their lands but whose lands have not been physically taken by the government entity. To constitute compensable damages under this section, the owner must show "a unique or special injury which is different in kind, or not common to, the general public." *Northglenn v. Grynberg, supra,* 846 P.2d at 179. Depreciation in value is not grounds to award compensation for property damage under the constitutional provision. Also, the greater amounts of noise and pollution suffered by a landowner adjacent to a public highway are not different in kind from the effects suffered by the public in general. *Lakewood v. DeRoos,* 631 P.2d 1140 (Colo.App.1981).

To qualify as compensable damage, the damage must be different from and not merely greater in degree then that suffered by the general public. Annoyance and inconvenience do not rise to the level of compensable damages. *Thompson v. Denver, supra.*

The trial court relied on *Thompson v. Denver, supra,* in reaching its conclusion. The factual similarities between *Thompson* and this case are striking. All the properties are in the same locale and similar distances from DIA. The use of the properties, *i.e.,* residences in a rural, primarily agricultural area, are similar. The damages claimed in each case are similar: noise, pollution, and vibration.

The *Thompson* panel found persuasive the holding in *Harrison v. Denver City Tramway Co.,* 54 Colo. 593, 603, 131 P. 409, 413 (1913), in which the supreme court rejected a homeowner's claim of compensatory damages, stating:

> The annoyance, discomfort, and injury suffered by the plaintiff from the loud and disagreeable noises and vibrations produced by the [tramway] cars passing over the tracks and around the curves, and the ringing of alarm bells at the place and times in question, are the same, except in degree, as are suffered by the public generally as far as such sounds and vibrations are heard and felt.

The *Thompson* panel concluded that the annoyance, discomfort, and injury caused by the noise, pollution, and vibrations from aircraft overflights suffered by the claimant were the same, except in degree, as those suffered by the public in general.

We find *Thompson* and *Harrison* to be controlling in the circumstances presented here and conclude that the trial court did not err by finding that the injuries suffered by the plaintiffs did not differ in kind from those suffered by the public in general.

Accordingly, we conclude that the trial court was correct in dismissing the damaging claims of the plaintiffs.

## III. Fifth Amendment Claim

Plaintiffs contend that the trial court erred by dismissing their claims for relief for alleged violations of the Fifth and Fourteen Amendments on the basis that they were not ripe for review. We disagree.

The Fifth Amendment does not prohibit the taking of private property for a public use; rather, it prohibits taking it without just compensation. *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). Neither does it require that just compensation be paid in advance, so long as the government has provided a process for obtaining compensation. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).

Based on these considerations, the Supreme Court has ruled:

> [I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.... Thus, the State's action is not "complete" in the sense of causing a constitutional injury unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.... Likewise, because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation

after the taking, the State's action here is not "complete" until the State fails to provide adequate compensation for the taking. *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126, 144 (1985).

In *Hamilton Bank*, the Supreme Court held that Fifth Amendment claims, brought before pursuing a state inverse condemnation claim, were premature. The trial court here relied on *Hamilton Bank* in finding plaintiff's Fifth Amendment claims were not ripe for review.

Plaintiffs argue that *Hamilton Bank* should be understood to apply only to Fifth Amendment claims brought pursuant to 42 U.S.C. § 1983 (2000). We are not persuaded.

■■■ 42 U.S.C. § 1983 does not create substantive rights; it provides a procedure to seek relief for violation of certain federal constitutional and statutory provisions. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Consequently, the Supreme Court in *Hamilton Bank* discussed the ripeness of a claim under the Fifth Amendment, and did not limit its holding to a Fifth Amendment claim brought pursuant to 42 U.S.C. § 1983. We are persuaded that *Hamilton Bank* applies to any Fifth Amendment taking claim, however the plaintiff chooses to state the claim.

In this regard, we note that a division of this court has held that *Hamilton Bank* is dispositive of a claim grounded in the Fifth Amendment. *Jorgenson v. Aurora*, 767 P.2d 756 (Colo.App.1988). This claim was stated under 42 U.S.C. § 1983, but as noted above, this distinction is not controlling.

*Hamilton Bank* was applied by the U.S. Court of Appeals for the Tenth Circuit in *Miller v. Campbell County*, 945 F.2d 348 (10th Cir.1991). There, the court affirmed the dismissal of a claim against a county government alleging a taking in violation of the Fifth Amendment. The court held that the claim was not ripe because a state law inverse condemnation claim was pending, and therefore, it was not clear that property had been taken without just compensation.

Here, the plaintiffs attempted to bring their Fifth Amendment claims along with their state inverse condemnation claims. Under the standard in *Hamilton Bank*, the Fifth Amendment claims cannot be ripe for judicial review until the companion inverse condemnation claims are resolved. Therefore, the trial court was correct in finding that plaintiffs' Fifth Amendment claims were not then ripe and dismissing those claims.

However, given our resolution of plaintiffs' inverse condemnation claims in parts I and II of this opinion, the plaintiffs' Fifth Amendment claims are now ripe for resolution. The factual basis of all of plaintiffs' claims are similar, and therefore, considerations of judicial economy and the convenience of the parties make it appropriate to allow the claim to be litigated in this action. Accordingly, the plaintiffs' Fifth Amendment claims must be reinstated.

Therefore, the judgment of the trial court dismissing the plaintiffs' "takings" and "damaging" claims is affirmed, the judgment dismissing the plaintiffs' Fifth and Fourteenth Amendment claims is vacated, and the cause is remanded for further proceedings.

HUME, C.J., and RULAND, J., concur.